[No. 44271. En Banc. April 28, 1977.]

LOUIS P. ESMIEU, ET AL, *Respondents*, v. ELISSA ESMIEU SCHRAG, ET AL, *Respondents*, JACK HSIEH, ET AL, *Petitioners*.

*Leavy, Taber, Schultz, Bergdahl & Sweeney,* by *John G. Schultz* and *Andrew C. Bohrnsen,* for petitioners.

*Edwards, Wetherall & Barbieri,* by *Malcolm L. Edwards* and *Robert G. Austin,* for respondents.

*Robert H. Aronson* on behalf of University of Washington Appellate Advocacy Program, amicus curiae.

DOLLIVER, J.—Petition for review was granted to review the decision of the Court of Appeals. *Esmieu v. Schrag,* 15 Wn. App. 260, 548 P.2d 581 (1976). The facts as set out herein are substantially as stated by the Court of Appeals, and are as follows:

This dispute involves approximately 15,500 acres of dry farmland and pastureland located in Walla Walla County.

At one time, this land was owned by Henry Esmieu, Sr., and Gabrielle Esmieu, his wife, now both deceased. In December of 1957, they conveyed an undivided one–half interest in the land in trust to their sons, Louis and Stephen Esmieu, for the benefit of certain persons, including their daughter and other son, Elissa and Henry, Jr. In January 1959, Henry Esmieu, Sr., died and by testamentary trust conveyed an additional undivided one–fourth interest in the property to Louis and Stephen. Gabrielle Esmieu, during her lifetime, conveyed certain undivided interests in the property to Stephen, Louis, Elissa and Henry Esmieu, Jr. Additionally, she conveyed certain undivided interests to three of her grandchildren. The balance of Gabrielle's interest was transferred in trust to Louis and Stephen.

The various provisions of the testamentary and inter vivos trusts gave Stephen and Louis the power to borrow upon the security of the trust, to lease or rent the trust property, and to manage and control all of the money and property, real and personal. The trusts were to terminate upon the death of the last Esmieu child, and the corpus was to be distributed to the surviving grandchildren. The trust also provided that the farm– and pastureland held could not be sold during the term of the trust.

In April of 1974, the trustees, in order to generate more income for the trust beneficiaries by diversifying the trust, filed a complaint asking the court to interpret the trust and to approve two agreements the trustees had executed with respect to the farm– and pastureland. The agreements which were subject to court approval were: (1) an offer for the exchange of an apartment complex for a portion of the trust land, and (2) a lease of and option to exchange other real estate for the remaining acreage. The exchange offer provided that Jack and Dorothy Hsieh would acquire the Villa Capri Apartments in Kennewick, Washington, and exchange them for 9,000 acres of the trust property. The lease and option covered the balance of the property and provided that the Hsiehs could lease the property until December of 1996. During the term of the lease but before

specified dates, the Hsiehs had the right to exchange real estate of equivalent value for various parcels of the remaining property.

A pretrial conference was held on May 24, 1974, and a pretrial order was entered on June 27, 1974. The defendants were given 20 days to file an answer to the complaint. The order approved the agreements, subject to later court approval of the specific property to be exchanged. All parties were directed to cooperate in locating suitable real estate. The trustees were to file a report prior to September 15, 1974, indicating the status of all important matters relating to the performance of the pretrial order including but not limited to offers of real estate in exchange for the trust land. The trustees were required to give the trust beneficiaries 10–days' written notice of any hearing on recommendations or acceptance or rejection of any specific property for the exchange.

On September 16, 1974, the trustees filed their report recommending the apartment exchange. Counsel for the trustees, without giving the requisite notice to the defendants or their counsel, persuaded the court to hear testimony by the trustees, Jack Hsieh and the trustees' business advisor. Mr. Hsieh testified there was a need for the speedy resolution of the exchange question because of the complexities involved in irrigating the trust land. The trustees' business advisor characterized the Villa Capri exchange as the best opportunity. He also stated he had examined the defendants' exchange proposals but that they were not adequate to satisfy the needs of the trust.

On September 25, defendants answered the complaint, objecting to the Villa Capri exchange on the grounds that: (1) it would not bring sufficient income; and (2) the trustees, the financial advisor, and the trustees' attorney had financial interests in the Villa Capri.

On September 30, a hearing was held where the counsel for the parties presented arguments to the court concerning the recommendation of the trustees. However, no evidence was taken.

On October 10, the court informed the parties by letter:

The Court believes it is imperative to obtain water for the land held in the Esmieu trust. This compelling need was probably the most important factor leading all interested parties to agree that the trust should be diversified.

At the time of the entry of the pretrial order, it was apparent to the Court it would require the cooperation of all parties and the expenditure of considerable funds to accomplish the purpose of the trustees. Due to the many complications of putting a package of this magnitude together, it appears to me it would be unfair to permit one or two objectors at this point to veto the proposal of the trustees, particularly where the objectors have offered no reasonable alternatives.

From the evidence presented in court, I am satisfied the trust will be benefited by the exchange proposed by the trustees. You may draw your order accordingly.

An order approving the Villa Capri exchange was presented on October 28, 1974. At that time, defendants' counsel argued the findings and conclusions contained in the proposed order were inappropriate since no evidence had been taken on the trustees' report. The court continued the matter for a day and a half to allow the defendants' counsel to submit evidence as an offer of proof.

On October 30, defendants made an offer of proof that: (1) the trustees' counsel and the Hsiehs had a one–fourth interest in the corporation which was the general partner of the Villa Capri limited partnership; (2) the financial advisor, the trustees' attorney, Mr. Hsieh, and a trustee, Stephen Esmieu, together owned 47 percent of the Villa Capri limited partnership; (3) Richard Esmieu, Diana Esmieu, James Esmieu, Elissa Schrag and Henry Esmieu, Jr., opposed the Villa Capri exchange; (4) an investment and tax consultant would not recommend the proposed exchange. After the offer of proof, defendants' counsel argued that the proposed findings were not supported by any evidence in that the only evidence before the court was in the form of defendants' offer of proof. At the conclusion of the hearing, the court accepted defendants' offer of proof as showing the interest the various individuals had in the

Villa Capri but rejected the rest. In order to compute the time period for the filing of a motion for reconsideration, defendants' counsel asked the court on what day it reached its decision. The court replied: "[October 10] was when I made up my mind. As far as I was concerned, that's when I made my decision." Defendants' oral motion for reconsideration was denied.

On November 18, the trial court entered findings of fact, conclusions of law, and an order approving the exchange of property. The guardian ad litem, appointed to represent the trust beneficiaries not represented by personal attorneys, was present at this hearing, but the attorney for the defendants was not. Counsel for the trustees advised the court he was authorized to state counsel for defendants approved of the order as to form. He further offered as evidence three exhibits to support the findings. The exhibits were admitted.

On January 6, 1975, the trustees filed a "Second Interim Report." On January 20, the defendants filed a motion to vacate the November 18 and the pretrial orders. Defendants' supporting affidavits raised questions of whether the trustees' attorneys and the financial advisor had breached their fiduciary obligation to the trustees and the beneficiaries by failing to disclose the opportunity to lease the land rather than exchange it. The court deferred taking any action on the second report until the motion was determined.

On February 3, the hearing was held on the motion to vacate. On that date, Jack and Dorothy Hsieh, Pacific Rim International, and Donald and Byrdeen Worley intervened in the action. The motion was denied.

On March 11, the court approved the second report and directed the defendants to execute quitclaim deeds for their undivided interest in the property to be exchanged.

Defendants appealed the denial of their motion to vacate and the approval of the second report. The two appeals were consolidated. Prior to the consideration of the appeal on its merits by the Court of Appeals, the defendants

moved for dismissal of their appeal and vacation of the orders appealed. Defendants contended that the appealed orders were void because their viability rested almost exclusively upon the ex parte evidence taken September 16, and the exhibits admitted November 18. The Court of Appeals continued its decision on the motion to dismiss until its consideration of the appeal on its merits.

The Court of Appeals granted the defendants' motion to dismiss and vacated the trial court's order. The Court of Appeals found that the plaintiffs' failure to notify the defendants that evidence would be presented to the trial court on September 16 and that court's reliance on such evidence in its November 18 order constituted a violation of due process (Const. art. 1, § 3), although this issue was not raised at the trial court.

The petitioners rely upon the terms of the pretrial order to defend the September 16 proceedings in the Superior Court. They point out that, under the terms of the June 27 pretrial order, the trustees were required to report to the court prior to September 15 on the status of all important matters, including any offers of real estate in exchange. Additionally, they argue that the court requested the trustees to report on their proposal to purchase the undivided interests of the various beneficiaries of the Esmieu properties. Petitioners contend that, since the defendants agreed to the June 27 pretrial order, they were on notice of the September 16 hearing (the 15th fell on a Sunday).

We find this rationale to be completely untenable. The pretrial order refers to a "written report prior to September 15, 1974." There is no reference in the pretrial order to a hearing on any particular date. *See State v. Kratzer,* 70 Wn.2d 566, 424 P.2d 316 (1967). Furthermore, the trustees acknowledged that they knew the defendants' attorney would not be available on that date and that he had requested a hearing be set for September 30.

In the past, this court has found several situations which merit exception from the general rule that error cannot be raised for the first time at an appellate level in civil

cases. *Maynard Inv. Co. v. McCann,* 77 Wn.2d 616, 465 P.2d 657 (1970); *Holzer v. Rhodes,* 24 Wn.2d 184, 163 P.2d 811, 172 A.L.R. 1173 (1945); *Wright v. Corbin,* 190 Wash. 260, 67 P.2d 868 (1937). We believe an exception should be made here.

To begin with, defendants' counsel claim, and we have no reason to disbelieve, that they were unaware evidence was taken on September 16 until the statement of facts was transcribed. The testimony taken on that day from the trustees, the trustees' business advisor, and Jack Hsieh pertained to the advisability of the exchange—the issue at the heart of the controversy between the parties. The error on September 16 was not cured in subsequent proceedings. The hearing held on September 30, while it addressed the same issues, included only argument of counsel; no testimony was taken. The court, in its letter of October 10, states its order was based on "the evidence presented in court." The *only* evidence which at that time had been presented in court was at the ex parte hearing of September 16. Furthermore, at the October 30 hearing, the court stated that "[October 10] was when I made up my mind." An order based on a hearing in which there was not adequate notice or opportunity to be heard is void. *See Sheldon v. Sheldon,* 47 Wn.2d 699, 289 P.2d 335 (1955); *Morley v. Morley,* 131 Wash. 540, 230 P.2d 645 (1924); *State v. Fishing Appliances,* 170 Wash. 426, 16 P.2d 822 (1932); 49 C.J.S. *Judgments* § 23 (1947).

We concur with the Court of Appeals and find there was a denial of procedural due process; the failure to take exception to the constitutional error was excusable; and that all subsequent orders based on the faulty hearing are void.

It should be noted that, while this appeal was filed prior to July 1, 1976, and while the old Rules on Appeal apply, the holding here is consistent with the new rule, RAP 2.5(a):

The appellate court may refuse to review any claim of error which was not raised in the trial court. However, a

party may raise the following claimed errors for the first time in the appellate court: . . . (3) manifest error affecting a constitutional right.

■ The violation of defendants' constitutional rights alone is sufficient to require the orders to be voided and the case remanded. There are additional circumstances, however, which make defendants' case even more persuasive. The trustees, as fiduciaries, owe to the beneficiaries the highest degree of good faith, care, loyalty and integrity. *Monroe v. Winn,* 16 Wn.2d 497, 133 P.2d 952 (1943); ·Bogert, *Trusts and Trustees* § 543 (2d ed. 1960). This duty includes the responsibility to inform the beneficiaries fully of all facts which would aid them in protecting their interests. *See United States v. Bennett,* 57 F. Supp. 670 (E.D. Wash. 1944); 90 C.J.S. *Trusts* § 247 (1955). At the very least, this would require the trustees to notify the beneficiaries of the September 16 hearing where testimony was taken which directly affected the disposition of the trust property. Though the trustees and defending beneficiaries were adversaries on the issue of the exchange, the trustees' duty of loyalty and care was at no time suspended. *See Monroe v. Winn,. supra.*

Beyond their common–law fiduciary duty of care and loyalty, the trustees were given a specific duty by the terms of the trust instrument. That instrument directed the trustees to consult with Elissa Esmieu Schrag and Henry Esmieu, Jr., "concerning all that they may do as . . . trustees." The trustees' violation of this provision compounded their breach of fiduciary duty. *See generally* 76 Am. Jur. 2d *Trusts* §§ 311, 336 (1975).

Finally, there was a specific duty imposed upon the trustees by a section of the June 27 pretrial order which states:

> that ten (10) days written notice shall be given by mail by the Trustees unto all life income and remaindermen beneficiaries . . . of their intention to recommend acceptance or rejection of any specific offer of real estate in exchange for any of the Esmieu lands . . .

The very terms of the order agreed to by the trustees and the defendants imposed a fiduciary duty on the trustees to give notice to the dissenting beneficiaries. *See* 76 Am. Jur. 2d *Trusts* § 312 (1975). The failure to do so was a breach of fiduciary duty as well as a violation of constitutional rights which condemns the ex parte testimony taken on September 16 and all subsequent orders.

We affirm.

WRIGHT, C.J., and ROSELLINI, HAMILTON, STAFFORD, UTTER, BRACHTENBACH, HOROWITZ, and HICKS, JJ., concur.