16 P.3d 574 (2001)
142 Wash.2d 784
Tina VAN NOY; Patricia Faye Dinnis (formerly Patricia Faye Burkett); and Elaine Ebersole; on behalf of themselves and all others similarly situated, Respondents,
v.
STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY and State Farm Fire and Casualty Company, Petitioner.
No. 68548-7.
Supreme Court of Washington, En Banc.
Argued June 29, 2000.
Decided January 18, 2001.
*575 Peter Anthony Danelo, Daniel J. Dunne, Robin E. Wechkin, Kenneth E. Payson, Seattle, for Petitioner.
Steven W. Berman, Sean R. Matt, Andrew M. Volk, Erin K. Flory, Seattle, for Respondents.
ALEXANDER, J.
This appeal had its inception when a group of State Farm Insurance Company (State Farm) policyholders commenced a class action against State Farm claiming that the insurance company breached fiduciary and contractual obligations, acted in bad faith, and violated the Consumer Protection Act (chapter 19.86 RCW). The trial court granted State Farm's motion for summary judgment and dismissed the plaintiffs' causes of action. The Court of Appeals reversed the trial court, concluding that there were material issues of fact which precluded summary judgment in favor of State Farm. State Farm obtained review here, claiming that the Court of Appeals (1) erred in its formulation of the fiduciary duty owed by State Farm to its insureds, and (2) neglected to analyze the plaintiffs' claims in the context of the entire class. We affirm the Court of Appeals and remand for trial.

I. FACTS
As noted above, the underlying action is a class-action lawsuit. Consequently, the events surrounding each class member's injury and subsequent dealings with State Farm vary to some extent. However, because the facts relating to one member of the class of plaintiffs, Tina Van Noy, are essentially representative of the entire class, we chronicle her circumstances.
*576 On October 14, 1993, Van Noy was injured in an automobile accident. Soon thereafter, she began a course of treatment that had been prescribed to her by her chiropractor. At the time of the accident, Van Noy was insured by State Farm. Her policy included personal injury protection (PIP), which is essentially no-fault coverage for medical expenses arising from bodily injuries sustained in an automobile accident. The PIP benefits that State Farm provided to Van Noy were described in the policy as follows:
What we Pay
We will pay for bodily injury to an insured caused by accident resulting from the maintenance or use of a motor vehicle as a motor vehicle:
1. Medical Expenses. These are reasonable expenses incurred within three years of the date of the accident. These expenses are for necessary:
a. medical, surgical, X-ray, dental, ambulance, hospital, professional nursing and rehabilitative services[.]
Clerk's Papers (CP) at 791. The "Settlement of Loss" portion of the policy stated that:
Payments will be made on a monthly basis within 30 days after we have proof of the amount due.
CP at 619. The same section further provided:
The amount due under this coverage shall be decided by agreement. If the insured and we cannot agree, it will be decided by arbitration upon mutual written consent.
CP at 619.
Approximately three weeks after the accident, Van Noy received a letter from the State Farm "First Party Benefits Expediter." CP at 793. The letter requested that Van Noy complete an enclosed application for medical benefits and also stated that:
Your insurance policy provides for payment of medical expenses that are reasonable and necessary. To assist us in determining this, we may obtain a second medical opinion. We may also have the treatment reviewed by other medical professionals. Your policy provides you must notify us as soon as reasonably possible after your treatment begins.
CP at 794. Van Noy complied with State Farm's request and filled out the medical benefits application. She then returned it to State Farm. This was followed by the submission to State Farm of billings that Van Noy had received from her health care providers.
For several months after the application and billings were sent to State Farm, Van Noy had no contact with the company. Finally, on March 28, 1994, nearly five months after Van Noy first began receiving treatment for her injuries, she received a missive from State Farm that stated, in relevant part, that:
Our contract of insurance with you requires that we pay only charges that are reasonable, necessary, and accident related. For that reason, we will be submitting the chiropractic and massage billings to an independent chiropractic consultant for evaluation. We will be guided by their recommendations and will pay only those charges which are deemed reasonable and necessary.
CP at 796.
Approximately one month later, Van Noy's attorney received another letter from State Farm. This letter indicated that State Farm's "peer review" determined that only a portion of Van Noy's claims would be paid. CP at 798. The letter also informed Van Noy's attorney that the "peer review group" was in the midst of evaluating the other billings submitted by Van Noy and that State Farm "will advise you of the outcome." CP at 798. As a consequence of State Farm's action, Van Noy remained personally liable for the unpaid portion of the expenses for her treatment.

II. PROCEEDINGS
Shortly thereafter, Van Noy and two other State Farm policyholders, Patricia Faye Dinnis and Elaine Ebersole, initiated a class-action lawsuit against State Farm. In their complaint they alleged that State Farm: (1) breached its fiduciary duty and contractual obligations, (2) engaged in bad faith handling of claims, and (3) violated the Washington Consumer Protection Act. Fundamentally, *577 the plaintiffs complained that State Farm ignored the language in its policies that provided that payments be made on a monthly basis and, instead, "stockpiles" the bills for months before finally deciding whether to honor claims for medical expenses. Answer to Pet. for Review at 1. The plaintiffs sought damages for all health care provider expenses that State Farm disallowed more than 30 days after receipt of the PIP claims. All of their causes of action were based on what they claimed was "State Farm's practice of retroactive denial of coverage, effective months prior to when the notice [was] given." CP at 30. Pursuant to CR 23, the plaintiffs moved for class certification. Over State Farm's objections, the trial court granted their motion and certified a statewide class of State Farm policyholders whose policies contained PIP coverage.
The class moved for partial summary judgment on the issues of State Farm's duty and breach of that duty. State Farm responded with its own summary judgment motion, asserting that all of the claims against it should be dismissed. The trial court denied the class's motion but granted State Farm's and dismissed the lawsuit entirely.
The class appealed to Division One of the Court of Appeals. That court reversed the grant of summary judgment in favor of State Farm, and remanded for trial, concluding that there were issues of material fact with respect to each cause of action brought by the plaintiffs. See Van Noy v. State Farm Mut. Auto. Ins. Co., 98 Wash.App. 487, 983 P.2d 1129 (1999). We, thereafter, granted State Farm's petition for review.

III. DISCUSSION
State Farm's petition raises two issues for our consideration. It first contends that the Court of Appeals erroneously formulated the applicable fiduciary duty that State Farm owes to its first-party insureds. State Farm's second claim of error is that the Court of Appeals "erred in its treatment of plaintiffs' breach of contract claim." Pet. for Review at 14.[1] The class responds that the appellate court correctly formulated the applicable fiduciary duty and did not err in concluding that there was a factual question as to whether State Farm breached its contract with Van Noy, Dinnis, Ebersole and the other members of the class.
Summary judgment orders are reviewed de novo by this court. Hayden v. Mut. of Enumclaw Ins. Co., 141 Wash.2d 55, 1 P.3d 1167 (2000). In doing so we observe the well-known principle that summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." CR 56(c). Such a motion will be granted, after considering the evidence in the light most favorable to the nonmoving party, only if reasonable persons could reach but one conclusion. Reynolds v. Hicks, 134 Wash.2d 491, 495, 951 P.2d 761 (1998).

A. State Farm's Fiduciary Duty
State Farm asserts that the Court of Appeals erred in two respects in its analysis of the fiduciary duty it owed to the plaintiff class. There are two components to State Farm's argument. First, it claims that the appellate court's opinion could be erroneously interpreted as imposing a duty on insurance companies to "`disclose all facts that would aid its insureds in protecting their interests....'" Pet. for Review at 9. It also asserts that the Court of Appeals incorrectly imposed a "novel duty" on State Farm when the court stated that "`[a]n insurer has an enhanced fiduciary obligation ....'" Pet. for Review at 11. In support of its argument, State Farm points to the following portion from the Court of Appeals opinion:

*578 A fiduciary or quasi-fiduciary relationship exists between an insurer and its insured. An insurer has an enhanced fiduciary obligation that rises to a level higher than that of mere honesty and lawfulness of purpose. It requires an insurer to deal fairly with an insured, giving equal consideration in all matters to the insured's interests as well as its own.
The representatives argue that State Farm owed and violated three overlapping fiduciary duties to its insureds: (1) the duty to disclose all facts that would aid its insureds in protecting their interests; (2) the duty of equal consideration; and (3) the duty not to mislead its insureds.
Whether or not breach of any of these duties is ultimately supported, at a minimum there is a factual question in this case whether State Farm fully, timely, or adequately disclosed the possibility of the retroactive denial of medical claims.
Van Noy, 98 Wash.App. at 492, 983 P.2d 1129 (footnotes omitted).
State Farm takes exception to this excerpt from the Court of Appeals decision to the extent it appears to impose a duty on State Farm to "`disclose all facts that would aid its insureds in protecting their interests....'" Pet. for Review at 9. It contends that an insurer does not owe such a duty to its insured. Such a duty, it argues, exists only in legal relationships that are deemed "true fiduciary relationships" such as the relationship between a trustee and a beneficiary. Id. (citing Allard v. Pac. Nat'l Bank, 99 Wash.2d 394, 663 P.2d 104 (1983)).
State Farm is correct in observing that the phrase "duty to disclose all facts that would aid its insureds" has its roots in a decision of this court that dealt with a true fiduciary relationship, i.e., the relationship between a trustee and beneficiary. In Esmieu v. Schrag, 88 Wash.2d 490, 498, 563 P.2d 203 (1977), we observed that a trustee's fiduciary "duty includes the responsibility to inform the beneficiaries fully of all facts which would aid them in protecting their interests." Id. (emphasis added). After our decision in Esmieu, we noted in another case that the fiduciary duty we discussed in Esmieu was that of a "true fiduciary" and further observed that "something less than a true fiduciary relationship exists" in the insurance context. Safeco Ins. Co. of Am. v. Butler, 118 Wash.2d 383, 389, 823 P.2d 499 (1992). Thus, it appears that the phrase State Farm assails, which is based on our decision in Esmieu, has no application in an insurance context.
We are not troubled, however, by the fact that the Court of Appeals made reference to the language in Esmieu applicable to a "true fiduciary." That is so because the Court of Appeals merely made reference to the "duty to disclose all facts that would aid its insureds" in setting forth the argument advanced by the class representatives. It did not, in our judgment, indicate that there was a factual question about whether this duty was breached. Rather, it concluded that there was a factual question about "whether State Farm fully, timely, or adequately disclosed the possibility of the retroactive denial of medical claims." In short, the Court of Appeals did not hold, nor did it suggest, that State Farm was a "true fiduciary." To the contrary, the opinion explicitly states that a "quasi-fiduciary relationship" exists between State Farm and the plaintiff class. Van Noy, 98 Wash.App. at 492, 983 P.2d 1129.
State Farm also contends that the Court of Appeals erred by imposing a "novel fiduciary duty" on State Farm by stating that "`[a]n insurer has an enhanced fiduciary obligation....'" Pet. for Review at 11. State Farm suggests that an insurance company has an "`enhanced fiduciary obligation'" only when it is "defending an insured under a third-party liability policy, and under a reservation of rights." Id. at 11-12. Because in this case State Farm is dealing with its insured, it argues, it has no "enhanced fiduciary obligation." Id. at 11.
The lower court's discussion of fiduciary duty cannot, in our view, be read as wrongly stating the fiduciary duty that State Farm owed to the plaintiff class. As we have noted, the Court of Appeals correctly observed that there is a "quasi-fiduciary relationship that exists between an insurer and its insured." Van Noy, 98 Wash.App. at 492, 983 P.2d 1129. The court was also correct *579 when it followed the reference to an insurance company's "enhanced fiduciary obligation" with the statement that an insurer must "deal fairly with an insured, giving equal consideration in all matters to the insured's interests as well as its own." Van Noy, 98 Wash.App. at 492, 983 P.2d 1129. The latter statement from the Court of Appeals' opinion regarding the obligations of an insurer is unassailable because it is essentially a verbatim statement of the fiduciary duty that this court has imposed upon insurance companies in both first-party and third-party contexts.[2]See Coventry Assocs. v. Am. States Ins. Co., 136 Wash.2d 269, 280, 961 P.2d 933 (1998); McGreevy v. Or. Mut. Ins. Co., 128 Wash.2d 26, 36-37, 904 P.2d 731 (1995) (citing Tank v. State Farm Fire & Cas. Co., 105 Wash.2d 381, 385-86, 715 P.2d 1133 (1986)). It is not at all surprising to us, therefore, that the Court of Appeals cites to both McGreevy and Tank to support its discussion of the insurers' fiduciary duty.
The only arguable problem with the Court of Appeals' formulation of the fiduciary duty is its use of the word "enhanced" to modify the words "fiduciary obligation." See Van Noy, 98 Wash.App. at 492, 983 P.2d 1129. The use of that word is not, however, problematic because it is apparent that the Court of Appeals used it to emphasize the fact that an insurance company has an elevated good faith obligation "that rises to a level higher than that of mere honesty and lawfulness of purpose." Van Noy, 98 Wash.App. at 492, 983 P.2d 1129. We are satisfied that the reference to "enhanced fiduciary obligation" was not made to impose a novel fiduciary duty on State Farm. A comparison of this court's discussion of an insurance company's fiduciary obligation in Tank and the Court of Appeals statement in Van Noy leads us to this conclusion. In Tank, we noted that:
an insurance company's duty of good faith rises to an even higher level than that of honesty and lawfulness of purpose toward it policyholders: an insurer must deal fairly with an insured, giving equal consideration in all matters to the insured's interests.
Tank, 105 Wash.2d at 386, 715 P.2d 1133. As the excerpt from Tank illustrates, an insurance company has an elevated or "enhanced" duty of good faith which requires it to "deal fairly" giving "equal consideration" to its insureds. In sum, we believe that it is this duty of fair dealing and equal consideration that the Court of Appeals was referring to when it made the statement to which State Farm takes exception.
We hold that the Court of Appeals did not err in its formulation of the applicable fiduciary duty that an insurer owes to its insured. That duty, as has been described by the courts of this state on several occasions, is a duty to exercise a high standard of good faith which obligates it to deal fairly and give "equal consideration" in all matters to the insured's interests. The Court of Appeals did not stray from that definition and, therefore, there was no error in its formulation *580 of the applicable fiduciary duty that State Farm owes to the plaintiff class.
B. Plaintiffs' Breach of Contract Claim
State Farm also contends that the Court of Appeals neglected to analyze the plaintiffs' breach of contract claim in the class context. More specifically, it suggests that the court erred in distinguishing the Court of Appeals case of Reichl v. State Farm Mut. Auto. Ins. Co., 75 Wash.App. 452, 880 P.2d 558 (1994), in its analysis of plaintiffs' contract claims.
The plaintiffs' breach of contract claim is based on the language in the insurance policy that states "[p]ayments will be made on a monthly basis within 30 days after we have proof of the amount due." The class contends that this language obligated State Farm to pay or deny claims within 30 days of receipt of medical bills or, at minimum, provide "sufficient disclosure of the possibility of retroactive denial." Answer to Pet. for Review at 15. State Farm argues that the Court of Appeals failed to follow the Reichl opinion, suggesting that it is a case where the court was "confronted with precisely the same policy language" we have here. Pet. for Review at 14. According to State Farm, the Court of Appeals, Division Two, held in Reichl that "`proof of the amount due'" is not equivalent with "`submission of medical bills.'" Id. It argues, therefore, that it was not in breach of the insurance contract when it failed to pay the claims within 30 days after it received medical bills from its insured.
We find ourselves in agreement with the Court of Appeals that Reichl is distinguishable from the present case. In that case, the plaintiff sought damages from her insurance company for delay in payment of her medical bills. The Court of Appeals concluded there that delay damages were not justified under the evidence because the plaintiff had failed to timely provide additional proof or information sought by the insurer before fully settling her claims against the tortfeasor. In other words, because the plaintiff in Reichl was partially at fault for any delay in processing the claims, damages were not available to her.
Here, unlike the situation in Reichl, the issue of who is responsible for the delay is not material to the plaintiffs' breach of contract claim. The plaintiffs claim that State Farm breached the contractual agreement because it failed to "provide[ ] sufficient disclosure of possibility of the retroactive denial." Answer to Pet. for Review at 15. The contractual issue, therefore, revolves around the reasonableness of State Farm's action in handling the claims that were presented to it. As the Court of Appeals correctly observed, that issue should be resolved by a trier of fact.

IV. CONCLUSION
In conclusion, we are satisfied that the Court of Appeals properly defined the scope of State Farm's fiduciary duty in this case. Furthermore, we do not believe that the Court of Appeals erred in its analysis of the plaintiffs' breach of contract claim. We, therefore, affirm the Court of Appeals determination that the decision of the trial court granting summary judgment to State Farm should be reversed.
SMITH, SANDERS, IRELAND, BRIDGE, JJ., and GUY, J.P.T., concur.
TALMADGE, J.[*] (concurring).
While I agree with the majority this case should be remanded for trial, I write separately because of the majority's imprecise formulation of State Farm Mutual Automobile Insurance Company's (State Farm) duty to its insureds.
As the majority notes, the Court of Appeals spoke in terms of an "enhanced" fiduciary duty owed by State Farm to its insureds. The Court of Appeals' formulation of this duty implied the insurer was essentially a true fiduciary to its insured. The majority correctly disagrees with that formulation *581 of the duty owed by insurers to insureds.[1]
In the most basic sense, a fiduciary duty arises out of a trust relationship:
A leading authority defines a fiduciary as "a person having a duty, created by his undertaking, to act primarily for the benefit of another in matters connected with his undertaking." The usual expectation, based on the nature of the relationship, is that a fiduciary will discharge this undertaking to act on behalf of another in a selfless manner and will indeed act "primarily" for the benefit of the other, which includes keeping the interests of the other foremost in mind (through loyalty and full disclosure) and acting with care.
A fiduciary relationship is a relationship of trust, which necessarily involves vulnerability for the party reposing trust in another. One's guard is down. One is trusting another to take actions on one's behalf. Under such circumstances, to violate a trust is to violate grossly the expectations of the person reposing the trust. Because of this, the law creates a special status for fiduciaries, imposing duties of loyalty, care, and full disclosure upon them. One can call this the fiduciary principle. To recognize such duties and enforce a reasonable expectation of trust, requiring a person granted the trust of another to honor and respect that trust is both understandable and of utmost importance.
J. Dennis Hynes, Freedom of Contract, Fiduciary Duties, and Partnerships: The Bargain Principle and the Law of Agency, 54 Wash. & Lee L.Rev. 439, 441-42 (1997) (footnotes omitted).[2]
In our cases, we have held the utmost duty, placing the interest of the person to *582 whom the duty is owed above that of the fiduciary's personal interest, is owed only in the context of a "true" fiduciary relationship like trustee/beneficiary. Esmieu v. Schrag, 88 Wash.2d 490, 563 P.2d 203 (1977). This "true" fiduciary duty does not exist in the insurance setting. Safeco Ins. Co. of Am. v. Butler, 118 Wash.2d 383, 389, 823 P.2d 499 (1992). But we have imposed a lesser fiduciary duty where the insurer defends an insured under a reservation of rights. In Tank v. State Farm Fire & Casualty Co., 105 Wash.2d 381, 385-86, 715 P.2d 1133 (1986), we described this duty as follows:
Such a relationship exists not only as a result of the contract between the insurer and insured, but because of the high stakes involved for both parties to an insurance contract and the elevated level of trust underlying insureds' dependence on their insurers. This fiduciary relationship, as the basis of an insurer's duty of good faith, implies more than the "honesty and lawfulness of purpose" which comprises a standard definition of good faith. It implies "a broad obligation of fair dealing", and a responsibility to give "equal consideration" to the insured's interests. Thus, an insurance company's duty of good faith rises to an even higher level than that of honesty and lawfulness of purpose toward its policyholders: an insurer must deal fairly with an insured, giving equal consideration in all matters to the insured's interests.
This duty in the third party context is entirely understandable. The insurer is simultaneously defending the insured against a lawsuit by a third party under the insurance policy's duty to defend/duty to indemnify and litigating issues of coverage with the insured. The potential for an insurer's conflicting loyalties and financial interests is manifest and our crafting of a fiduciary duty owed by insurers to insureds is entirely sensible.
But the duty owed by an insurer to an insured in the first-party insurance setting is an entirely different matter and the majority's formulation of the "fiduciary" duty owed by the insurer to the insured in the first-party insurance context is imprecise. It is difficult to understand how an insurer can be a fiduciary to its insured when there is a conflict regarding a claim. This is not like the circumstance in a reservation of rights situation described in Tank. As one commentator noted:
The relationship between a first-party insurer and its policyholder is ill-suited for fiduciary controls. Indeed, fiduciary theory simply does not work here for at least two reasons. First and foremost, an insurer's interests and an insured's interests are not aligned when the insured is claiming on his own behalf, as they are in third-party cases where insurer and insured face a common adversary. The insurer is never cast as the insured's agent. The insurer and insured do not deal in trust when a first-party claim is made; here they are adversaries. Even when a claim is clearly covered, the insurer and insured may disagree over the amount due or the nature of the benefits to be paid. This inherent conflict, which is well-recognized in insurance law, cannot be reconciled with the existence of a fiduciary relationship.
Second, there is no conceivable set of circumstances in which the insured surrenders control of litigation in which it is a party to the insurer. In the first-party context, any litigation is the product of either the insured or the insurer suing the other. Regardless, the insured controls the litigation.
Richmond, supra, at 20 (footnotes omitted).
We have discussed the duty owed by first-party insurers to insureds as one of good faith. Coventry Assocs. v. Am. States Ins. Co., 136 Wash.2d 269, 961 P.2d 933 (1998). Good faith is the proper analytical focus for first-party insurance because the relationship between a first-party insurer and insured does not involve a fiduciary duty, enhanced, limited, or otherwise.
The more precise formulation of the duty owed by the insurer carrier to the insured is that of good faith, rather than a fiduciary duty. This duty of good faith permeates Washington's Insurance Code. For example, RCW 48.01.030 defines the public interest in insurance:
The business of insurance is one affected by the public interest, requiring that all persons be actuated by good faith, abstain *583 from deception, and practice honesty and equity in all insurance matters. Upon the insurer, the insured, their providers, and their representatives rests the duty of preserving inviolate the integrity of insurance.
See also WAC 284-30 (fair claims handling). Under this duty of good faith, in the first-party insurance setting, the insurer must deal fairly with its insured in the claim context of a claim and must give equal consideration to the interests of the insured in handling a claim.
While I agree with the majority's disposition of this case, the stronger analytical anchor for the majority's approach to the relationship between first-party insurers and insureds in claims handling will be found in the duty of good faith expressed in Washington's Insurance Code rather than the more amorphous and inappropriate formulation of a fiduciary relationship.
JOHNSON, J., and MADSEN, J., concur.
NOTES
[1] State Farm also asserts in its petition for review that the plaintiffs failed to present "class-wide evidence" of reliance and breach in their tort and CPA claims. Pet. for Review at 15, 19. These arguments essentially attack the trial court's decision to certify this case as a class action lawsuit. Because State Farm could have raised these certification issues at the Court of Appeals, we do not address these issues. See RAP 5.1(d); RAP 2.4(a). We also decline to discuss issues that State Farm has raised in its supplemental brief because these issues were not previously raised in State Farm's petition for review. See RAP 13.7(b).
[2] We note that Justice Talmadge asserts, in his concurring opinion, that an insurer does not owe a fiduciary duty to its insureds in the first-party insurance context, but rather, owes only a duty of "good faith." We are doubtful that there is any real difference between a "fiduciary" duty and a duty of "good faith" in the insurance context. We say that because we have long held that the duty of the insurer to act in good faith toward the insured is the same as the fiduciary relationship that the insurer has to the insured. See Tank v. State Farm Fire & Cas. Co., 105 Wash.2d 381, 385, 715 P.2d 1133 (1986) ("The duty to act in good faith or liability for acting in bad faith generally refers to the same obligation.... the fiduciary relationship existing between the insurer and insured.").

Even assuming, however, that there is a difference between a "fiduciary" duty and a duty of "good faith" in the insurance context, we disagree with the notion that an insurer has only a duty of "good faith," and not a "fiduciary" duty, to its insureds in the first-party insurance context. We note in this regard that we have stated: "[T]he fiduciary relationship existing between insurer and insured ... exists not only as a result of the contract between insurer and insured, but because of the high stakes involved for both parties to an insurance contract and the elevated level of trust underlying insureds' dependence on their insurers." Tank, 105 Wash.2d at 385, 715 P.2d 1133. This dependence and heightened level of trust exists not only where the insurer and the insured's interests are aligned, as in the third-party context, but also, and perhaps even more so, in the first-party context, where the insurer's interests might be opposed to the insured's and the insured is particularly vulnerable and dependent on the insurer's honesty and good faith.
[*] Justice Philip Talmadge is serving as a justice pro tempore of the Supreme Court pursuant to Const. art. IV, § 2(a) (amend. 38).
[1] This confusion regarding the duty of an insurer to an insured is entirely understandable. As a commentator noted:

The characterization of an insurer's responsibility as "fiduciary" is neither analytically precise nor functionally helpful. In fact, the courts' use of the term "fiduciary" in insurance cases has been muddled and confusing. As early as 1960, the Washington Supreme Court characterized an insurer's duty of good faith as one that "springs from a fiduciary relationship." In Tank v. State Farm Fire & Cas. Co., the court continued to characterize the insurer-insured relationship as fiduciary in nature. However, in Safeco Ins. Co. of Am. v. Butler, the court subsequently stated that it had always been "clear" from the "language" of Tank that it was not a "true" fiduciary relationship. After reconsidering its earlier characterization of the insurer-insured relationship, the court in Butler has offered the conceptually murky characterization that the relationship between an insurer and its insured has "fiduciary aspects," but is "something less" than a true fiduciary relationship.
More recently, the Supreme Court has improperly characterized the insurer-insured relationship as one that involves even more than a normal fiduciary relationship. In McGreevy v. Oregon Mut. Ins. Co., the court referred to the relationship as a "special fiduciary relationship" and an "enhanced fiduciary obligation."
Of more practical benefit are the specific standards imposed by WAC 284-30-300 et seq. and the general analytical tools formulated in Tank for the evaluation of whether an insurer complied with its good-faith duties. Characterizing the duty is far less important than defining, at least in general terms, what that duty requires. An insurer must know the extent to which it can weigh its legitimate interests against those of its insured. Without such guidance, an insurer cannot properly determine how to resolve the various problems that it will face in discharging its obligations.
In Tank and Butler, the court defined the weight that an insurer must give to its insured's interests. The standard that an insurer must follow is both simple and conceptually clear: "[A]n insurer must deal fairly with an insured, giving equal consideration in all matters to the insured's interests." An insurer is not obligated to subjugate its own legitimate interests to the interests of its insured.
Thomas V. Harris, Washington Insurance Law § 2.2 (2000) (footnotes omitted).
[2] The duty of a fiduciary to his beneficiary is essentially that of a trustee. A fiduciary "is bound to act in the highest good faith toward his beneficiary" and he may never seek to gain an advantage over his beneficiary by any means. A fiduciary must give priority to his beneficiary's best interest whenever he acts on the beneficiary's behalf. A fiduciary owes his beneficiary a duty of undivided loyalty, meaning that a fiduciary cannot abandon or stray from this relationship to further his own interests. Examples of fiduciary relationships include "an attorney for a client, a corporate director or officer for the corporation or its shareholders, an agent for the principal, a guardian for the ward, a bailee for the bailor, a partner for the other partners, joint venturers for one another, and a physician for his patient."

Douglas R. Richmond, Trust Me: Insurers Are Not Fiduciaries to Their Insureds, 88 Ky. L.J. 1, 2 (2000) (footnotes omitted).