

# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | |
|---|---|
| In the Matter of the ) | |
| ) | |
| MARITAL TRUST B CREATED ) | No. 74201-9-I |
| UNDER THE LAST WILL AND ) | |
| TESTAMENT OF FELECIA A. ) | DIVISION ONE |
| GRAHAM DATED OCTOBER 26, ) | |
| 1988, F/B/O FREDERICK A. ) | |
| GRAHAM. ) | UNPUBLISHED OPINION |
| ) | |
| BANK OF AMERICA, N.A., ) | |
| ) | |
| Respondent, ) | |
| ) | |
| v. ) | |
| ) | |
| FREDERICK A. GRAHAM, ) | |
| ) | FILED: November 28, 2016 |
| Appellant. ) | |

LEACH, J. — Frederick Graham, the beneficiary of his mother's testamentary trust, appeals the trial court's approval of the trustee's distribution plan and dismissal of his claim that the trustee breached its fiduciary duty. He also challenges the trial court's statement that a "separate remainder interest" in the trust exists. Finally, he contends that the trustee violated its fiduciary duty by asserting in a pleading that this interest exists. But Graham does not challenge the trial court's decision that the trustee, Bank of America, N.A. (the Bank), did not abuse its discretion by creating the distribution plan. We decline to review the trial court's statement about a remainder interest because it is superfluous.

And because the Bank did not advocate for one beneficiary's share in a particular fund at another beneficiary's expense but rather advanced a position to protect the purposes of the trust, it did not breach its fiduciary duty. Accordingly, we affirm. As a result, we deny Graham's request that the Bank reimburse the trust for its trial court attorney fees. And because Graham's appeal does not benefit the trust, we deny his request for appellate fees and costs.

## FACTS

Felecia Graham established a testamentary trust benefitting her husband, Donald Graham Jr. and giving a remainder interest to her two sons, Frederick and Donald III. Felicia died in 2001. In 2012, Donald Jr. relinquished his lifetime interest in the trust by agreement with his sons. The agreement divided the trust into two subtrusts, one for the benefit of each son. This appeal concerns the subtrust (hereinafter "the trust") for Frederick Graham.[1]

The trust directs the trustee to pay the trust income to Graham annually for the rest of his life. It also permits the trustee to make distributions from the principal in certain circumstances:

> If . . . in the judgment of the Trustee the aggregate income payable to any descendant, together with the other resources and income of such beneficiary which the Trustee deems to be reasonably available to him or to her for such purposes . . . shall be insufficient

---

[1] The appellant, Frederick Graham, is referred to here as "Graham." Other members of the Graham family are referred to by their first names. No disrespect is intended.

No. 74201-9-I / 3

to provide for the proper support in his or her accustomed manner of living . . . , the Trustee may distribute or expend for the benefit of such beneficiary such portion of the principal of [the trust] as the Trustee shall deem necessary for such purpose under the circumstances.

The trust also provides that when Graham dies, his interest "shall be distributed as he shall appoint or provide by his will or, in the absence of such appointment or provision, to his estate."

When the Bank became the trustee, it anticipated that the trust would generate about $200,000 in annual income. The Bank distributed the trust income annually to Graham. In late 2013, Graham requested that the Bank convert the trust from a net income trust to a four percent unitrust.[2] This would allow Graham to receive annually four percent of the trust's value—around $320,000—instead of the trust's annual income. The Bank agreed and began working on a nonjudicial agreement to make the requested change.[3]

Graham then began requesting increasing distributions of both income and principal, asserting that the income alone was not enough to support his "accustomed manner of living."[4] The Bank determined that it could not meet Graham's requests through a unitrust and that "further due diligence was required before making such significant decisions about discretionary

[2] See RCW 11.104A.040. A "unitrust" is one "from which a fixed percentage of the fair market value of the trust's assets, valued annually, is paid each year to the beneficiary." BLACK'S LAW DICTIONARY 1748 (10th ed. 2014).
[3] See RCW 11.104A.040.
[4] Graham eventually requested $760,000 annually.

distributions." Noting that the trust permits it to consider Graham's other sources of income in making discretionary distributions, the Bank performed a stochastic analysis to determine how to provide sufficient distributions to support his living standard.[5] Seeking to apply the terms of the trust, the Bank considered numerous factors, including Graham's father's life expectancy, Graham's spending habits over the previous five years, market fluctuations, inflation, income taxation, trust administration expenses, and "prudent investment strategy."[6] The Bank concluded that $661,974 was an appropriate annual distribution that would permit Graham to receive distributions for 10 years—his father's life expectancy.

Graham did not agree. The parties attempted but failed to negotiate an agreement under the Trust and Estate Dispute Resolution Act (TEDRA).[7] The

---

[5] "[S]tochastic analysis essentially takes the goal of the portfolio"—here, to provide distributions to Graham for the rest of his father's life—"and then runs thousands of hypothetical 'what-if' scenarios to generate a wide range of statistically-representative, possible future results." The Bank chose a plan "where 95% of the results generated by the 'what-if' scenarios resulted in a success, which maximizes annual disbursements with the greatest likelihood that the Trust will last Donald Graham, Jr.'s lifetime."

[6] While the Bank stated that it gave "due regard to the respective interests of [Graham] and the remaindermen," it chose the maximum amount it could distribute to Graham that would allow the principal to last for 10 years. Any principal left for a remainder interest would thus be incidental.

[7] Ch. 11.96A RCW. During these negotiations, the trial court granted the Bank's petition that it appoint William L. Fleming as a special representative for "yet unascertained vested remaindermen of the Trust." The trial court dismissed Fleming at summary judgment, finding the remainder's interests did not conflict with Graham's.

Bank then petitioned the trial court for guidance. The Bank asserted the propriety of its methods for determining the distribution amount. It also asserted that because the trust provides that the remainder of Graham's interest go to persons he appoints or to his estate, a separate remainder interest existed. The Bank reasoned that Graham had a conflict of interest with that remainder interest because distributions from the trust to Graham would inevitably reduce the amount left for Graham's estate or appointees. The Bank asserted that the remainder interest thus needed a guardian ad litem (GAL) to represent it. Both parties moved for summary judgment. Graham alleged that the Bank had breached its fiduciary duty by asserting a position adverse to his.

The trial court granted the Bank's motion and denied Graham's. The court approved the Bank's methods for developing its distribution plan and found that the Bank did not abuse its discretion as trustee. The court also noted that it agreed with the Bank that "there is a separate remainder interest" in the trust. It concluded, though, that Graham's interests do not conflict with those of the remainder because the trustor's intent and the Bank's plan "encompass the possibility that little or nothing will remain for the unascertained remaindermen when the life interest terminates." Finally, the trial court "reserve[d] ruling on whether," should a later conflict develop between Graham and the Bank, "virtual representation is appropriate, a GAL must be appointed, or other relief is

warranted." Graham appeals the trial court's grant of summary judgment for the Bank, denial of Graham's motion for summary judgment, and denial of reconsideration.

## STANDARD OF REVIEW

We review an order granting summary judgment de novo, performing the same inquiry as the trial court.[8] We affirm summary judgment where there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law.[9]

## ANALYSIS

### Remainder Interest

In Graham's challenge to the summary judgment order, he assigns error only to the court's statements that the trust includes "a separate remainder interest" held by "unascertained remaindermen."[10]

This court may affirm for any reason the record supports.[11] "[A] trustee presumptively has comprehensive powers to manage the trust estate and

---

[8] Owen v. Burlington N. & Santa Fe R.R., 153 Wn.2d 780, 787, 108 P.3d 1220 (2005).

[9] Owen, 153 Wn.2d at 787.

[10] The trial court "reserve[d] ruling on whether," should a later conflict develop between Graham and the Bank, "virtual representation is appropriate, a GAL must be appointed, or other relief is warranted."

[11] Wash. State Commc'n Access Project v. Regal Cinemas, Inc., 173 Wn. App. 174, 223, 293 P.3d 413 (2013).

otherwise to carry out the terms and purpose of the trust."[12] Where a trust gives the trustee discretion to carry out its provisions, courts review the trustee's exercise of those powers for abuse of discretion.[13]

Here, the parties agree that the trust gives the Bank discretion as trustee, directs the Bank to distribute annual income to Graham as the beneficiary, and permits the Bank to make distributions from principal where that income is, "in the judgment of the trustee[,] . . . insufficient to provide for the proper support in [the beneficiary's] accustomed manner of living."

Accordingly, Graham effectively concedes each of the rulings the trial court made on summary judgment. He does not contend that the Bank abused its discretion in reaching an annualized distribution of $661,974. Nor does he contend that the Bank's method in determining the proper distributions was not reasonable and prudent.

Instead, Graham and the Bank debate how to characterize the interest, if any, that the trust gives to the appointees of Graham's will or his estate. Graham asks this court to determine as a matter of law that no separate remainder interest exists and to reverse the trial court's statement to the contrary. If there is a remainder interest, Graham reasons, the trustee has a fiduciary duty to it. This

---

[12] RESTATEMENT (THIRD) OF TRUSTS § 70 cmt. a (2007).
[13] Templeton v. Peoples Nat'l Bank of Wash., 106 Wn.2d 304, 309, 722 P.2d 63 (1986).

duty could interfere with future distributions to Graham. And, Graham suggests, if he and the Bank execute a nonjudicial agreement[14] in the future, such "remainder beneficiaries" may attack it.[15]

> The function of a summary judgment proceeding is to determine whether a genuine issue of material fact exists. It is not . . . to resolve issues of fact or to arrive at conclusions based thereon. Consequently, . . . findings of fact and conclusions of law entered [on summary judgment] are superfluous.[16]

We decline to decide the best way to characterize the interest that the trust creates in Graham's eventual estate because that determination was superfluous and unnecessary to the trial court's summary judgment decision. The trust provides for income to go to Graham during his lifetime and gives the trustee discretion to distribute principal when necessary to support his living standard. The parties and the trial court all acknowledge that the Bank used a reasonable method in determining distributions in accordance with the trust's terms. The overwhelmingly likely outcome of that method is that money will be

---

[14] Under TEDRA, if all parties agree to a resolution of a matter related to a trust or an estate, the parties can settle the matter by signing a written agreement. RCW 11.96A.220. If the parties file the written agreement with a court, it becomes the equivalent of a final court order binding all interested parties. RCW 11.96A.230(2).

[15] The Bank asserts, as it did to the trial court, that a conflict exists between Graham and unascertained remainder beneficiaries. But the Bank does not cross appeal or assign error to the trial court's finding that there is no conflict of interest. We decline to reach that issue.

[16] Duckworth v. City of Bonney Lake, 91 Wn.2d 19, 21-22, 586 P.2d 860 (1978) (emphasis omitted) (citation omitted).

left in the trust when Graham's father dies. That money will remain not because the Bank is saving it for holders of a remainder interest but because the Bank is saving it for Graham himself: the trust requires that the Bank must continue to ensure Graham's support throughout his life. The Bank cannot know when Graham's father will die and leave Graham, all the parties assume, a large sum.[17] Graham's father may die before the trust is exhausted. Under the terms of the trust, the leftover money will remain in the trust and go to Graham's appointees or the takers of his estate.

This possible remainder interest is not the reason for either the Bank's decisions or the trial court's order approving them. We decline to rule on whether "remainder beneficiaries" may attack a nonjudicial agreement in the future and whether future trust decisions will first require a determination of whether they require a GAL. These controversies have not arisen. Likewise, the effect that the trust's spendthrift clause would have on Graham's assertion that his is the only interest in the trust is, at this stage, "purely academic."[18] Accordingly, we affirm the February 12, 2015, summary judgment order and March 6 denial of reconsideration.

---

[17] The Bank has consistently stated that this is the reason for limiting distributions as it has.

[18] See Grays Harbor Paper Co. v. Grays Harbor County, 74 Wn.2d 70, 73, 442 P.2d 967 (1968) ("Ordinarily if the question is purely academic, this court is not required to pass upon it and will not do so however much both parties desire such a determination.").

Breach of Fiduciary Duty

Graham also contends that the Bank breached its fiduciary duty to him by contending, in its TEDRA petition, that a "present beneficial remainder interest existed."

TEDRA provides for resolution of trust and estate disputes and related matters.[19] The statute allows a party to seek a "declaration of rights or legal relations with respect to any matter."[20] The definition of a "matter" is extremely broad and includes construction of a trust or a "direction of a personal representative or trustee to do or to abstain from doing any act in a fiduciary capacity."[21]

A trustee has the power to initiate actions to defend trust property.[22] It is also a fiduciary for the trust's beneficiaries and owes them the "highest degree of good faith, care, loyalty and integrity."[23] "If a trust has two or more beneficiaries, the trustee must act impartially in administering the trust and distributing the trust property, giving due regard to the beneficiaries' respective interests."[24] A trustee thus cannot "'litigate the conflicting claims of beneficiaries'" by appealing orders

---

[19] RCW 11.96A.010.
[20] RCW 11.96A.080(1).
[21] RCW 11.96A.030(2)(b), (c)(i).
[22] RCW 11.98.070(37).
[23] Esmieu v. Schrag, 88 Wn.2d 490, 498, 563 P.2d 203 (1977).
[24] RCW 11.98.078(8).

"'determining which beneficiaries are entitled to share in a particular fund.'"[25] But a trustee also has a duty to "protect the plan of the trustor and protect the trust itself" by taking "legitimate steps to uphold the testamentary instrument."[26]

Graham cites no authority indicating a trustee breaches its fiduciary duty by filing a TEDRA petition seeking instructions about whether a GAL is required, even if that petition argues for a position opposed to a beneficiary's. Graham relies on Northern Trust Co. v. Heuer.[27] In Heuer, the appellate court of Illinois held that the trustee breached its duty of impartiality by advocating for one beneficiary's interests at the expense of another. The trustee was arguing alongside one beneficiary that an equalization clause applied. That clause would increase the amount that beneficiary would receive from the trust at the expense of another beneficiary.[28] But the same court recently declined to apply the Heuer holding in a case that more closely resembles Graham's. The court in Laubner v. JP Morgan Chase Bank, NA,[29] noted that "Heuer involve[d] an

---

[25] In re Estate of Bernard, 182 Wn. App. 692, 729, 332 P.3d 480 (quoting Estate of Ferrall, 33 Cal. 2d 202, 204, 200 P.2d 1 (1948)), review denied, 181 Wn.2d 1027 (2014).

[26] Bernard, 182 Wn. App. at 729-30 (holding that trustee did not violate its duties by appealing summary judgment that found trust amendment and will codicil void).

[27] 202 Ill. App. 3d 1066, 560 N.E.2d 961, 148 Ill. Dec. 364 (1990).

[28] Heuer, 202 Ill. App. 3d at 1069, 1072.

[29] 386 Ill. App. 3d 457, 465, 898 N.E.2d 744, 325 Ill. Dec. 697 (2008) ("[I]t can just as well be said that protecting the principal benefits plaintiffs; cost of living is sure to rise, and plaintiffs themselves state they expect to live another 30 years.").

instance of blatant favoritism on the part of the trustee for one beneficiary over the other." It contrasted that favoritism with the actions of the trustees in the case before it, who "adopted a conservative and responsible distribution plan that incidentally benefits the remaindermen by protecting the principal."[30] The court held that those trustees did not breach their fiduciary duty in doing so.

Here, the Bank was not displaying "blatant favoritism" like the trustee in Heuer. It did not even take a position that would reduce its distributions to Graham. Instead, like the trustee's plan in Laubner, the Bank's actions protected the principal primarily for Graham's benefit, as the trustor intended, to the incidental benefit of any remainder interest.[31] Whether or not a separate remainder interest existed, the Bank calculated its distributions to maximize the amount Graham would receive while ensuring that the trust could continue to provide for him until his father died. Thus, even if we look to Illinois case law as Graham urges, Laubner is more persuasive than Heuer.

Moreover, in In re Estate of Bernard,[32] this court cited with approval the rule that a trustee appealing a trial court decision only breaches its duty of impartiality when the appealed order "'determin[ed] which beneficiaries are entitled to share in a particular fund.'" This court held that, instead, a trustee has

---

[30] Laubner, 386 Ill. App. 3d at 465.
[31] See Laubner, 386 Ill. App. 3d at 464-65.
[32] 182 Wn. App. 692, 729, 332 P.3d 480 (quoting Ferrall, 33 Cal. 2d at 204), review denied, 181 Wn.2d 1027 (2014).

a duty "to protect the plan of the trustor and protect the trust itself," which may require it to appeal orders that threaten that plan.[33] The same reasoning applies when, as here, the trustee files a TEDRA petition seeking to clarify its duties under the trust. Like the trustee in Bernard, the Bank was fulfilling its duty to "protect the plan of the trustor and protect the trust itself" by asking the trial court whether a conflict of interest existed between Graham and a remainder interest. The Bank did not need to be disinterested in seeking the trial court's opinion. Doing so was consistent with its responsibility to interpret and administer the trust document.[34]

This court's decision in Bernard recognized that as a policy matter, the duty of impartiality cannot prohibit a trustee from advocating a position "'to protect the trust against an attack that goes to the very existence of the trust itself,'" even if that position appears adverse to a beneficiary's.[35] This court recognized that if it found that such an action breaches the trustee's duties, then "'the trial court, when all beneficiaries consent, could completely disregard the provisions of the trust, even though there is no justification for a deviation from its

---

[33] Bernard, 182 Wn. App. at 730.

[34] See RESTATEMENT § 87 cmt. b ("A court will not interfere with a trustee's exercise of a discretionary power . . . when that conduct is reasonable, not based on an improper interpretation of the terms of the trust, and not otherwise inconsistent with the trustee's fiduciary duties.").

[35] Bernard, 182 Wn. App. at 729 (emphasis omitted) (quoting Ferrall, 33 Cal. 2d at 206).

terms.'"[36]   Here, the trustor, Graham's mother, plainly intended that the trust support Graham's living standard through distributions of income and, where the trustee deems necessary, principal.  The position Graham has advanced in this litigation would obviate that purpose by effectively mandating that the trustee distribute any amount Graham requests.  The Bank violated no duty by taking a different position to protect the trust.

Attorney Fees

Graham contends that because the Bank breached its fiduciary duty, it must reimburse the trust for the attorney fees that both Graham and the Bank incurred at the trial level.[37]   He also asks that the Bank or the trust pay his attorney fees for this appeal.

The Bank responds that the trust should bear the Bank's attorney fees as a cost of administration.[38]   It agrees that the trust should pay for Graham's reasonable attorney fees, as well.   Since it acknowledges that Graham's advocacy for his position helped the trial court reach the best result, the Bank agrees that the trust should pay Graham's attorney fees in those proceedings. But it contends that Graham's present appeal is not a reasonable expense as Graham has only depleted the trust in his efforts to get larger distributions from it.

---

[36] Bernard, 182 Wn. App. at 729 (quoting Ferrall, 33 Cal. 2d at 205-06).
[37] See Allard v. Pac. Nat'l Bank, 99 Wn.2d 394, 407, 663 P.2d 104 (1983).
[38] See RCW 11.98.070(27).

This court "will not interfere with the decision to allow attorney fees in a probate matter, absent a manifest abuse of discretion."[39] Generally, a trust should pay reasonable expenses for good faith legal proceedings related to its administration.[40] TEDRA contains an equitable and flexible fee provision.[41] It gives courts broad discretion to award attorney fees and costs from parties or estate assets.[42] The trial court should consider "whether the litigation and the participation of the party seeking attorney fees caused a benefit to the trust."[43]

This court may grant an award of reasonable attorney fees on appeal to a party that requests them in its opening brief, so long as applicable law authorizes the award.[44] TEDRA authorizes appellate attorney fee awards based on factors this court deems appropriate.[45]

Here, the trial court ordered that the trust pay Graham's trial court attorney fees and costs. It denied Graham's request that it order the Bank to reimburse the trust for those expenses.[46]

---

[39] In re Estate of Black, 116 Wn. App. 476, 489, 66 P.3d 670 (2003), aff'd on other grounds, 153 Wn.2d 152, 102 P.3d 796 (2004).

[40] Monroe v. Winn, 19 Wn.2d 462, 466, 142 P.2d 1022 (1943).

[41] RCW 11.96A.150.

[42] In re Wash. Builders Benefit Tr., 173 Wn. App. 34, 84-85, 293 P.3d 1206 (2013).

[43] In re Estate of Wimberley, 186 Wn. App. 475, 512, 349 P.3d 11, review denied, 183 Wn.2d 1023 (2015).

[44] RAP 18.1.

[45] RCW 11.96A.150.

[46] The Bank does not contest the trust's payment of reasonable attorney fees and costs to Graham.

The trial court did not abuse its discretion in making this ruling. Because the petition was reasonably necessary to determine the interests in the trust, the trial court did not abuse its discretion by ordering the trust to pay the Bank's attorney fees.[47]

Graham also asks this court to order the Bank to reimburse the trust for its own fees and Graham's because it breached its fiduciary duty. Because the Bank did not breach that duty, we decline to order the Bank to reimburse the trust.

Finally, we also deny Graham's request that the trust pay his attorney fees in this appeal. The "touchstone" for TEDRA attorney fee awards is "'whether the litigation resulted in a substantial benefit to the estate.'"[48] For instance, Division Two of this court recently awarded appellate fees from a trust where the appellant beneficiaries raised "a legitimate issue of statutory interpretation" and prevailed.[49] Graham raises no such issues and does not prevail in his appeal. His appeal does not substantially benefit the trust but only depletes it further.

---

[47] See In re Estate of Evans, 181 Wn. App. 436, 452, 326 P.3d 755 (2014), review denied, 185 Wn.2d 1031 (2016).

[48] In re Estate of Mower, 193 Wn. App. 706, 728, 374 P.3d 180 (2016) (quoting Black, 116 Wn. App. at 490), petition for review filed, No. 93521-1 (Wash. Aug. 30, 2016).

[49] Estate of Mower, 193 Wn. App. at 729.

## CONCLUSION

Because Graham concedes that the Bank did not abuse its discretion in creating a plan for distributing the trust, we affirm the trial court's summary judgment order approving that plan. We need not decide whether a separate remainder interest exists. Further, because the Bank did not advocate for one beneficiary's interests in a particular fund at the expense of another beneficiary, we also affirm the trial court's summary judgment dismissal of Graham's breach of fiduciary duty claim. Accordingly, we decline to order the Bank to reimburse the trust for trial court attorney fees. We also deny Graham's request that the Bank or the trust pay his appellate fees.

_Leach, J._

WE CONCUR:

_Trickey, A.C.J._