# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | |
|---|---|
| In the Matter of the Custody of S.M. and A.M. | No. 78208-8-I |
| JOHN MCCULLA SR. and ANNACARIN MCCULLA, | DIVISION ONE |
| Respondents, | PUBLISHED OPINION |
| and | |
| CAREY MCCULLA, nka CAREY MILTON, | |
| Appellant, | |
| JOHN MCCULLA JR., | |
| Defendant. | FILED: July 1, 2019 |

APPELWICK, C.J. — Milton filed a petition to modify a nonparental custody order. The superior court found that Milton failed to establish adequate cause for a hearing on the petition. RCW 26.10.190 applies the adequate cause standard of RCW 26.09.260(1) to modifications of nonparental custody orders. Milton argues that the adequate cause standard is unconstitutional as applied to nonparental custody proceedings. We agree. That standard does not provide a parent a meaningful opportunity to demonstrate that he or she has remedied the unfitness or detriment to the child that was the basis for the nonparental custody

order. We reverse and remand for a new adequate cause hearing consistent with this opinion.

## FACTS

S.M. and A.M. are the children of Carey Milton[1] and John McCulla, Jr. Both Milton and McCulla, Jr. have a history of substance abuse, and Milton has struggled with bipolar disorder.

On March 21, 2016, the children's paternal grandparents, John McCulla, Sr. and Annacarin McCulla, filed a petition for nonparental custody, asserting that neither Milton nor McCulla, Jr. was a suitable custodian. A court appointed special advocate (CASA) conducted an investigation and recommended that the petition be granted. At the time, S.M. was seven years old and A.M. was three years old.

McCulla, Jr. joined in the petition and Milton opposed it. Trial on the petition was held on March 20, 2017. Milton did not appear. According to Milton, she did appear but had a panic attack, threw up, and had to leave the courthouse.

On April 14, 2017, the trial court entered a final nonparental custody order placing S.M. and A.M. with the paternal grandparents. It made accompanying findings of fact that Milton was unfit, that the children would suffer actual detriment if living with her, and that placement of S.M. and A.M. with the grandparents was in the children's best interests:

> Regarding the respondent mother, she suffers from suicidal
> ideations, is medically diagnosed as bipolar, and has admitted to

---

[1] The pleadings below refer to the appellant as either "Carey McCulla" or "Carey Milton." We use "Milton" as that is how the appellant addresses herself.

2

methamphetamine use in previous court proceedings and reported the same to CASA. The mother has also been committed to a psychiatric institution for psychiatric treatment several times over the past few years. The mother has a history of domestic violence and threats of harm against the respondent father, the petitioners, and even the maternal grandparents. The mother has exhibited her physical and aggressive behavior in front of the children as evidenced by police reports. It is not in the best interest of the minor children to reside with the respondent mother.

. . . .

The children are thriving in the care of the petitioners. The children are excited to be in their current school district. [T]hey regularly attend their medical and dental appointments, and have sufficient space in the new home that they reside in with the petitioners and the paternal great grandmother. The children are well-adjusted and cheerful.

Mother is unfit and an actual detriment to children would occur if children placed with her.

The trial court entered an order limiting Milton's contact with the children to three hours of supervised visitation on Saturday or Sunday. Milton was ordered to complete domestic violence treatment, undergo a substance abuse evaluation and participate mental health counseling and medication management.

Approximately seven months later, on November 29, 2017, Milton filed a petition to modify the nonparental custody order. The petition alleged as follows:

Mother is currently complying with court requirements, has adequate housing, and the ability to meet her children's needs. It is no longer necessary for the children to reside with their paternal grandparents.

In support of her petition, Milton provided a declaration in which she stated,

In 2017, it was confirmed that I am bi-polar, after two hospitalizations. In my manic phases, I have damaged relationships, lost jobs, and lost my children. Since my medication has stabilized through a mood stabilizer, injected once a month at Valley Cities, I

3

have been able to finish an associate degree, maintain employment for over six months, get my own apartment and regain control of my life.

Milton also provided documentation showing that she complied with the substance abuse evaluation. But, Milton did not complete the domestic violence portion of the trial court's order and instead disputed the domestic violence allegations.[2]

On January 26, 2018, a superior court commissioner found that Milton failed to establish adequate cause to modify the nonparental custody order. The commissioner noted that Milton did not meet the criteria for modification stated in the nonparental custody order.

> So I am denying the request for adequate cause. I read these orders to be very specific about what Ms. Milton is expected to do. And that includes domestic violence treatment that happens after entry of the order on April 10, 2017. Also with proof that that provider is given a copy of all of the CASA reports.

The commissioner also found that the modification statute, RCW 26.09.260(1), precluded Milton from seeking to modify a nonparental custody order based on a change in her own circumstances:

> I think it is wonderful what I read about the new medication helping and being given in a more reliable type of way. And so that is great and I don't want to undermine that at all. But I do not find that when there are constitutionally sufficient findings of unfitness that a parent can come back to court within a year of entry of those orders after trial and say I am substantially better now, and so let's do away with those orders. I don't think that is what the statute says, and I don't think that is what the case law says.

The commissioner's written order states as follows:

---

[2] Though Milton had previously completed a one year domestic violence program, it was prior to the entry of the nonparental custody order and did not include collateral information as required by the trial court.

4

Respondent, Carey Milton has not provided proof of compliance with all requirements in the 4/10/17 orders Judge McCullough entered after trial. That court's constitutionally sufficient findings after trial mean Ms. Milton must meet the major modification standard as she requests a major mod[ification] less than a year after trial. She has not met her legal burden, has not proven substantial change in circumstances and detriment to the children under RCW 26.09.260.

Milton sought revision of the commissioner's ruling from a superior court judge. That judge denied the motion for revision on the grounds that Milton was precluded from seeking modification based on a change in her own circumstances:

> The Court cannot find adequate cause exists to modify the April 10, 2017 Order for Non-parental Custody. Respondent Carey Milton[,] under current case law and the wording of the statute[,] does demonstrate affirmative steps have been taken to remedy the court's concerns regarding her fitness as a parent.

Milton appeals.

## DISCUSSION

Chapter 26.10 RCW sets forth the procedure for nonparental custody actions.[3] RCW 26.10.030(1) provides that a party may file a nonparental custody

---

[3] On May 21, 2019, the governor signed into law Second Substitute Senate Bill (2SSB) 5604, the uniform guardianship, conservatorship, and other protective arrangements act. Bill Information: SB 5604, WASHINGTON STATE LEGISLATURE, https://app.leg.wa.gov/billsummary?BillNumber=5604&Year=2019&Initiative=Fals e (last visited June 12, 2019). 2SSB 5604 repeals chapter 26.10 RCW in its entirety and substantially changes the procedure by which a nonparent may assume guardianship of a child. FINAL B. REP. ON SECOND SUBSTITUTE S.B. 5604, at 3, 66th Leg., Reg. Sess. (Wash. 2019). Under the new statute, a court may establish a guardianship for a child upon a showing that "[t]here is clear and convincing evidence that no parent of the minor is willing or able to exercise the powers the court is granting the guardian." LAWS OF 2019, ch. 437, § 201(2)(c). A parent may move to terminate the guardianship upon a showing that this standard "is not satisfied," unless termination of the guardianship is not in the child's best interests. LAWS OF 2019, ch. 437, § 212. But the new law, which takes effect on January 1, 2021, will not apply to Milton on remand. LAWS OF 2019, ch. 437, §§

petition "if the child is not in the physical custody of one of its parents or if the petitioner alleges that neither parent is a suitable custodian." The court must make a threshold determination that the petition and supporting affidavits establish adequate cause for a hearing. RCW 26.10.032.

RCW 26.10.100 provides that, in nonparental custody proceedings, "[t]he court 'shall determine custody in accordance with the best interests of the child.'" But, the "best interest of the child" standard, by itself, is a "constitutionally insufficient basis on which to deprive a parent of parental rights." In re Custody of Z.C., 191 Wn. App. 674, 692, 366 P.3d 439 (2015) (citing In re Custody of Smith, 137 Wn. 2d 1, 20, 969 P.2d 21 (1998), aff'd by Troxel v. Granville, 530 U.S. 57, 120 S. Ct. 2054, 147 L. Ed. 2d 49 (2000)). Consequently, In re Custody of Shields, 157 Wn.2d 126, 140, 136 P.3d 117 (2006), the Washington Supreme Court imposed additional, nonstatutory requirements. A petitioner must establish that (1) the parent is unfit or (2) that the parent is fit but placement with the parent would cause actual detriment to the child's growth and development. Id. at 150. This is a high standard that will typically be met only in "'extraordinary circumstances.'" In re Custody of B.M.H., 179 Wn.2d 224, 236, 315 P.3d 470 (2013) (quoting In re Marriage of Allen, 28 Wn. App. 637, 649, 626 P.2d 16 (1981)).

---

807, 213 ("This chapter does not affect the validity of any court order issued under chapter 26.10 RCW prior to the effective date of this section. Orders issued under chapter 26.10 RCW prior to the effective date of this section remain in effect and do not need to be reissued in a new order under this chapter.")

Once a nonparental custody order is entered, it may be modified only pursuant to chapter 26.09 RCW, the statute governing the dissolution of marriage and allocation of residential time and decision-making between parents. RCW 26.10.190. To modify a nonparental custody order, a court must find that

> upon the basis of facts that have arisen since the prior decree or plan or that were unknown to the court at the time of the prior decree or plan, that a substantial change has occurred in the circumstances of the child or the nonmoving party and that the modification is in the best interest of the child and is necessary to serve the best interests of the child.

RCW 26.09.260(1) (emphasis added). "Missing from the grounds for modification is a substantial change in the circumstances of the parent moving for modification." Z.C., 191 Wn. App. at 695 (emphasis added). The party moving for a modification of a parenting plan must submit an affidavit setting forth facts supporting the motion. RCW 26.09.270. Again, unless the affidavits establish adequate cause for hearing the motion, the court must deny the motion without a hearing. RCW 26.09.270. In the context of a nonparental custody order modification, "adequate cause" means, at a minimum, evidence "'sufficient to support a finding on each fact that the movant must prove in order to modify.'" In re Custody of E.A.T.W., 168 Wn.2d 335, 347, 227 P.3d 1284 (2010) (quoting In re Marriage of Lemke, 120 Wn. App. 536, 540, 85 P.3d 966 (2004)). The moving party's affidavit in support of the modification must "establish new or previously unknown facts." In re Marriage of MacLaren, __ Wn. App. __, 440 P.3d 1055, 1056 (2019).

7

Milton first contends that if a parent remedies his or her own parental deficiencies that are the basis of a nonparental custody order, this constitutes "a substantial change . . . in the circumstances of the child" for the purposes of modifying such an order pursuant to RCW 26.09.260(1).

Statutory interpretation is a question of law that we review de novo. In re Adoption of T.A.W., 186 Wn.2d 828, 840, 383 P.3d 492 (2016). If a statute's meaning is plain on its face, we give effect to that meaning and the inquiry ends. Dep't of Ecology v. Campbell & Gwinn, LLC, 146 Wn.2d 1, 9-10, 43 P.3d 4 (2002). "[A] court must not add words where the legislature has chosen not to include them. A court also must construe statutes such that all of the language is given effect, and 'no portion [is] rendered meaningless or superfluous.'" Rest. Dev., Inc. v. Cananwill, Inc., 150 Wn.2d 674, 682, 80 P.3d 598 (2003) (alteration in original) (quoting State v. J.P., 149 Wn.2d 444, 450, 69 P.3d 318 (2003)).

Milton's argument suggests that any change in a parent's circumstances must necessarily result in a change in circumstances for the child. But, to read the statute as permitting modification based on a change in the parent's circumstances would render meaningless the phrase "the circumstances of the child or the nonmoving party." If the legislature had intended for a parent's changed circumstances to support a major modification, it would have said so expressly. It did so in a related statute governing minor modifications, which states that a court may order minor adjustments to a parenting plan "upon a showing of a substantial change in circumstances of either parent or of the child." RCW 26.09.260(5).

8

However, as the court in Z.C. noted, the major modification statute pointedly omits "the circumstances of the parent" as a basis. 191 Wn. App. at 695. Because it is clearly contrary to the legislature's intent, we decline to interpret RCW 26.09.260(1) in the manner that Milton suggests.

In the alternative, Milton argues that RCW 26.10.190, which applies the requirements of RCW 26.09.260(1) to modification of nonparental custody orders, is unconstitutional. She contends the statute violates her fundamental right to parent because it does not permit her to modify the nonparental custody order on the grounds that she has remedied the parental deficiencies forming the basis for the order.

The interpretation of a statute and the determination of whether a statute violates the United States Constitution are issues of law that are reviewed de novo. In re Parentage of C.A.M.A., 154 Wn 2d 52, 57, 109 P.3d 405 (2005).

The due process clause of the Fourteenth Amendment protects the fundamental right of parents to make decisions regarding the care, custody, and control of their children. U.S. CONST. amend. XIV, § 1, Troxel, 530 U.S. at 66. "The liberty interest . . . of parents in the care, custody, and control of their children [ ] is perhaps the oldest of the fundamental liberty interests recognized by [the United States Supreme] Court." Troxel, 530 U.S. at 65. Moreover, Washington maintains a strong public policy recognizing the "fundamental importance" of the parent-child relationship. RCW 26.09.002.

9

When parental actions or decisions seriously conflict with the physical or mental health of the child, the State has a parens patriae right and responsibility to intervene to protect the child. In re Welfare of Sumey, 94 Wn.2d 757, 762, 621 P.2d 108 (1980). But, even then, a parent's fundamental right to parent is not diminished:

> "The fundamental liberty interest of natural parents in the care, custody, and management of their child does not evaporate simply because they have not been model parents or have lost temporary custody of their child to the State." In re Welfare of B.P., 188 Wn App. 113, 165, 353 P.3d 224 (2015) (Fearing, J., dissenting) (citing Santosky v. Kramer, 455 U.S. 745, 753, 102 S. Ct. 1388, 71 L. Ed. 2d 599 (1982) (plurality opinion)), reversed by In re Parental Rights to B.P., 186 Wn.2d 292, 376 P.3d 350 (2016). The same is true where a parent has lost temporary custody to a family member.

Z.C., 191 Wn. App. at 704. "'[M]aintaining the family unit should be the first consideration in all cases of state intervention into childrens' lives.'" In re Dependency of K.N.J., 171 Wn.2d 568, 575, 257 P.3d 522 (2011) (quoting Comm. on Soc. And Health Servs., SUBSTITUTE H. CONCURRENT RES. 46, at 1, 44th Leg., 2d Ex. Sess. (Wash. Feb. 6, 1976)). Consequently, "[p]rotecting a parent's right to rear her or his child has sometimes required Washington and federal courts to read special protections into custody and visitation statutes when a parent's interest conflicts with that of a nonparent." In re Custody of T.L., 165 Wn. App. 268, 281, 268 P.3d 963 (2011).

A nonparental custody order is not intended to permanently deprive a parent of the care and custody of his or her child.[4] In distinguishing nonparental custody order from de facto parentage, this court held,

> [R]esidential placement is not equivalent to parental status. . . . A nonparent custody order confers only a temporary and uncertain right to custody of the child for the present time, because the child has no suitable legal parent. When and if a legal parent becomes fit to care for the child, the nonparent has no right to continue a relationship with the child.

In re Parentage of J.A.B., 146 Wn. App. 417, 426, 191 P.3d 71 (2008) (emphasis added). Division Three of this court concurred in Z.C.:

> A decree awarding custody to a nonparent under chapter 26.10 RCW is never permanent because custody is always subject to modification under RCW 26.09.260(1).
>
> J.A.B.'s observation has likely been repeated so often is [sic] because it comports with circumstances and understandings under which courts often see family members agreeing to serve as a nonparental custodian.

Z.C., 191 Wn. App. at 693 & n.5.

---

[4] In this way, nonparental custody orders are distinguished from termination of parental rights, which does result in the permanent disruption of the parent-child relationship. See RCW 13.34.200 ("Upon the termination of parental rights pursuant to RCW 13.34.180, all rights, powers, privileges, immunities, duties, and obligations, including any rights to custody, control, visitation, or support existing between the child and parent shall be severed and terminated and the parent shall have no standing to appear at any further legal proceedings concerning the child."). The fact that a parent whose parental rights to a child have been terminated may petition for nonparental custody of that child demonstrates that "custody" is not equivalent to "parentage." See In re Custody of R.R.B., 108 Wn. App. 602, 607, 31 P.3d 1212 (2001) ("The statute does not prohibit biological parents, whose parental rights were terminated, from petitioning for custody.").

However, in practice, a nonparental custody order is often tantamount to a permanent deprivation of parental rights because it can be modified if only the conditions of the child or the nonmoving party change. As this court held in In re Custody of C.C.M., 149 Wn. App. 184, 204-05, 202 P.3d 971 (2009), "A nonparental custody decree is also permanent, as . . . a natural parent subject to a nonparental custody petition under chapter 26.10 RCW risks permanent deprivation of control over the custody and care of the parent's child." "The circumstances under which a parent can move for modification of a custody decree are not within the control of the parent and may never occur." In re Marriage of King, 162 Wn.2d 378, 416, 174 P.3d 659 (2007) (Madsen, J., dissenting).

"[T]he fundamental requirement of due process is the opportunity to be heard at a meaningful time and in a meaningful manner." Post v. City of Tacoma, 167 Wn.2d 300, 313, 217 P.3d 1179 (2009). Since RCW 26.10.190 clearly contemplates that a parent may seek to modify a nonparental custody order, due process requires that he or she be given a meaningful opportunity to do so. The factual basis for a nonparental custody order is a finding that the parent is unfit or a detriment to the child. A parent has no meaningful opportunity to regain custody of his or her child if that parent is precluded from showing there is no longer a factual basis for the order. We conclude that RCW 26.10.190, which applies the requirements of RCW 26.09.260(1) to modification of nonparental custody proceedings, violates due process in so far as it limits the change in circumstances to that of the child or the nonmoving party.

12

Consistent with this conclusion, we also hold unconstitutional the requirement of RCW 26.10.190 that the modification be in the best interests of the child. The law presumes that a fit parent will act in the best interest of his or her child. Troxel, 530 U.S. at 68-69. Thus, just as Shields held that it is unconstitutional for a court to infringe on the parent-child relationship by making an initial custody determination based on a best interests analysis, it is similarly unconstitutional for a court to deny a modification on that basis. It may, however, provide grounds to impose conditions on the transition process by which the parent shall regain custody.

On remand, the superior court shall determine if Milton has established adequate cause for a hearing on the modification, consistent with this opinion. To establish adequate cause, Milton must present "new or previously unknown facts" showing a change in circumstances such that the factual basis for the order no longer exists. A nonparental custody order must be based on one of two factors: that the parent is unfit or that placement with an otherwise fit parent would cause actual detriment to the child's growth and development. These factors are mutually exclusive alternatives. Nonetheless, the trial court based its custody order on both factors. Milton did not appeal the original factual basis for the order. The dual basis is now the law of the case. See Seattle Police Officers Guild v. City of Seattle, 151 Wn.2d 823, 841 n.21, 92 P.3d 243 (2004). Thus, Milton bears the burden of establishing that she is a fit parent. She must also show that placement with her even if fit would not result in actual detriment to the children's growth and

13

development. The grandparents may present affidavits or evidence in opposition to Milton's claims. If the court finds there is no longer a factual basis for the nonparental custody order, it shall vacate the order and impose conditions as appropriate.[5]

Milton requests attorney fees on appeal, based on RAP 18.1 and RCW 26.10.080, which provides that upon any appeal, "the appellate court may, in its discretion, order a party to pay for the cost to the other party of maintaining the appeal and attorney's fees in addition to statutory costs." RCW 26.10.080 requires that the court "balance the needs of the party requesting fees against the other parties' ability to pay." In re Custody of Brown, 153 Wn.2d 646, 656, 105 P.3d 991 (2005). In this case, the trial court has consistently ordered that each party pay their own fees and costs. Considering the parties' needs and ability to pay, we decline to award Milton attorney fees.

Reversed and remanded.

Appelwick, CJ

WE CONCUR:

_____     _____

---

[5] A showing of a substantial change in circumstances requires more than a temporary period of stability. A determination of fitness is not made based on a single point in time, but looks from a point in time forward. "Custodial changes are viewed as highly disruptive to children" and courts do not exercise this power lightly. In re Marriage of McDole, 122 Wn.2d 604, 610, 859 P.2d 1239 (1993).

14