IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| IN THE MATTER OF THE CUSTODY OF | ) ) ) | No. 38680-5-III |
| K.P. AND L.P. | ) ) ) ) | UNPUBLISHED OPINION |

FEARING, C.J. — Linda Harris appeals decisions entered by the superior court during a process by which the court terminated Harris' custody of her grandchildren. The superior court returned custody to the mother, Angela Lockridge. We affirm the superior court.

FACTS

On June 24, 2013, Linda Harris obtained nonparental custody of her two grandchildren, "Kyle" and "Lucy," which are pseudonyms. Harris' daughter, Angela Lockridge, the mother of the children, agreed to the nonparental custody order because of her drug addiction and crimes. Lockridge was scheduled to serve a jail sentence. The children's father, Robert Greenamyer, was incarcerated as a sex offender. The nonparental custody order prohibited Lockridge or Greenamyer from contacting the children, except that Lockridge could visit with the children depending on her compliance with counselling and drug testing.

More than four years later, and on February 9, 2018, the nonparental custody order was modified based on agreement between Linda Harris and Angela Lockridge. The agreed parenting plan lacked specifics. The plan ordered Lockridge to complete a parenting assessment, drug and alcohol assessment, anger management course, and random urinalysis tests. A narrative attachment to the plan stated:

> (1) The parenting assessment is to provide a plan of reconciliation and reunification of
> (2) Angela and her children, [Kyle] and [Lucy]. This would begin with supervised visits,
> (3) and upon successful completion would move to unsupervised visits.

Clerk's Papers (CP) at 829.

## PROCEDURE

On June 14, 2021, Angela Lockridge filed a petition to terminate the nonparental custody order.

Linda Harris, acting without counsel, filed numerous narrative declarations in opposition to Lockridge's petition. In these declarations, Harris asserted that Kyle and Lucy should be appointed attorneys. In an August 5, 2021 hearing, Commissioner Jacquelyn High-Edward ruled that the governing statute did not allow for appointment of counsel for Kyle and Lucy pursuant to a motion to terminate a guardianship. Nevertheless, on August 8, 2021, Kyle and Lucy filed motions, written in Harris'

2

handwriting, for the appointment of attorneys. Superior Court Commissioner Pro Tem

Gregory Hicks approved appointment of attorneys for both children.

In an August 13, 2021 order, Commissioner High-Edward vacated the attorney

appointments and sanctioned Linda Harris $500 for seeking attorneys in an ex parte

hearing before a commissioner not assigned to the case and in violation of her August 5

ruling. Commissioner High-Edward also ordered that Angela Lockridge should have

residential time with the children during weekends, that Lockridge and Harris should

engage in joint decision making for the children, and that Lockridge and the children

should engage in counseling. The court commissioner also appointed a guardian ad litem

(GAL) for the case.

In an August 18, 2021 motion, Linda Harris requested to vacate the August 13

order under CR 60 and to overturn the $500 sanction. On September 16, 2021,

Commissioner High-Edward filed an order addressing Harris' motion. The

commissioner found that Harris had no legal or factual basis to bring the CR 60 motion

because CR 60 provides for relief only from final judgments, orders, or proceedings, and

Harris sought relief from an interlocutory order. The commissioner also found a lack of

factual basis to overturn the order, partly because evidence presented in a de facto

parentage action formerly advanced but later dismissed by Harris showed that Angela

Lockridge had been enjoying overnight visitation with her children before issuance of the

August 13 order. The commissioner refused to overturn the August 13 sanction.

3

No. 38680-5-III,
*In re Custody of K.P. & L.P.*

Commissioner High-Edward wrote in the September 16 order:

> that Ms. Harris continues to file declarations well over the page
> limits established by local rule (LSPR 94.04(h)(6)) as well as continues to
> include extensive child hearsay despite recognizing that it is not admissible.
> She also continues to act in bad faith by secretly having the children present
> during the last hearing, refusing to give Ms. Lockridge the zoom
> information so [Lucy] could participate in her acting classes, refuses to
> acknowledge Ms. Lockridge as the children's mother, refusing to sign the
> GAL [guardian ad litem] order, filing a petition to change the children's
> last names to the father's last name in violation of joint decision making,
> and exposing the children to their father who is a convicted sex offender
> and who has no contact under the non-parental custody action.

CP at 480. While citing CR 11 and Harris' bad faith, the commissioner sanctioned Harris
$750.

Linda Harris hired counsel. Harris, through counsel, moved a Superior Court
judge to revise Commissioner High-Edward's September 16 order. She argued that the
motion to vacate should have been reinterpreted as a motion to revise, asked to overturn
sanctions and fee awards, and requested a finding that Angela Lockridge's petition to
terminate nonparental custody was void. In separate orders, Superior Court Judge John
Cooney denied the motion to revise and motion to dismiss. Judge Cooney deemed that
the uniform guardianship, conservatorship, and other protective arrangements act (UGA)
did not incorporate the adequate cause standard required before proceeding to trial on a
modification petition.

On January 24, 2022, Linda Harris moved to revisit the appointment of the
guardian ad litem. In the motion, Harris argued that the guardian ad litem had since

4

become involved in another case in which Harris' counsel represented an opposing party.

Harris claimed the guardian ad litem possessed a conflict of interest in Harris' case. The

motion also again requested attorneys for the children. In an April 12, 2022 order,

Commissioner High-Edward found that Harris filed the motion in bad faith and with the

intent to intimidate the GAL and delay the guardian's investigation. The commissioner

further explained:

> The court finds Ms. Harris' and Mr. Mason's motion to revisit the GAL based on the fact that Ms. Paxton [the GAL] appeared on a case in which [counsel] Mr. Mason also appeared to be frivolous, intransigent and intended to delay and intimidate the GAL investigation. Ms. Harris filed this motion on January 21, 2022 and did not have it heard until March 30, 2022. During that time, no action on the investigation occurred. Further, Mr. Mason provided no authority that Ms. Paxton appearing on a completely unrelated case . . . caused any type of conflict or appearance of unfairness where there was no relationship between the parties. It befuddles the court's mind, and Mr. Mason provided no legal authority, on how such a situation would create a conflict or create an appearance of fairness issue for the GAL or Ms. Harris. The court finds that Ms. Harris' motion was intended to, and did, delay Ms. Paxton's investigation in the case.

CP at 953-54 (footnote omitted).

In the April 12, 2022 order, Commissioner High-Edward also faulted Linda Harris

for rearguing the issue of attorneys for the children when the commissioner had

previously ruled on that question. The commissioner found that Harris had most likely

submitted, caused, or encouraged declarations by Kyle and Lucy in support of the

motion, in violation of a local court rule. Commissioner High-Edward found that the last

sanction for $750 was insufficient to stop Harris' bad faith and intransigence. Thus, the commissioner sanctioned Harris $5,000 for her intransigence, bringing frivolous motions, and acting in bad faith.

Meanwhile, Angela Lockridge brought two motions for contempt against Linda Harris, the first filed on April 4, 2022 and the second on April 11, 2022. The motions asserted that Harris disobeyed the August 13, 2021 residential scheduling order. According to Lockridge, Harris prevented her from visiting Lucy or Kyle on the weekend. The motions asserted that Harris first precluded visitation with the children on the weekend of February 18, 2022. In response, Harris asserted that Lockridge possessed "unclean hands" because Lockridge posted a message on social media about Harris that violated a provision of the August 13 order. Commissioner High-Edward held that Harris had violated the August 13 order by denying Lockridge parenting time and ordered Harris to pay Lockridge a $500 money judgment.

In a petition for instructions, the children's GAL recommended the trial court appoint attorneys for Kyle and Lucy. Linda Harris filed a motion repeating the request for the children to be given attorneys. Court Commissioner Jeremy Schmidt denied appointment of counsel. Commissioner Schmidt concluded that appointment of counsel for the children was not in their best interests because it would unnecessarily draw them into the litigation between mother and grandmother.

6

The parties participated in a two-day bench trial before now-Judge Jacquelyn High-Edward. Following trial, the court terminated the minor guardianship. The court also entered a restraining order prohibiting Linda Harris from contacting the children outside of limited supervised contact.

## LAW AND ANALYSIS

Linda Harris forwards thirty assignments of error, but fails to dedicate any legal argument to support most of these assignments of error. This court does not consider assignments of error unsupported by argument or authority. *In re Marriage of Angelo*, 142 Wn. App. 622, 628 n.3, 175 P.3d 1096 (2008). We respond to those arguments advanced in the body of Harris' brief.

### Adequate Cause Hearing

Washington law previously permitted a nonparent to gain and retain custody over a child, whose parents could not properly care for the child, under a nonparental custody act. Because of concerns over the constitutionality of the nonparental act arrangement, particularly the act's standards to terminate nonparental custody, the Washington Legislature, in 2019, repealed the act and adopted the uniform guardianship, conservatorship, and other protective arrangements act. In this appeal, we must address the bridge between the two acts.

Linda Harris argues that the trial court followed an improper procedure when evaluating Angela Lockridge's petition to terminate the minor guardianship. Harris

7

asserts that, because the guardianship arose under a prior statutory scheme, the court should have adhered to that now-repealed scheme. Specifically, Harris claims the trial court should have required Lockridge to file a petition for "adequate cause" required under the nonparental custody act.

When Linda Harris obtained custody of Kyle and Lucy in 2013, former chapter 26.10 RCW, "Nonparental Actions for Child Custody," governed the relationship between Harris and the children. By the time Angela Lockridge filed her petition to terminate the custodial relationship, chapter 11.130 RCW, the "Uniform Guardianship, Conservatorship, and Other Protective Arrangements Act," (UGA) controlled the relationship. *See also* LAWS OF 2019, ch. 437; LAWS OF 2020, ch. 312. Correspondingly, the legal term "nonparental custody" has been replaced with the term "guardianship."

The former act imposed an "adequate cause" requirement on any party seeking to modify a nonparental custody order. Two provisions created this adequate cause requirement. The first provision lay within the former act itself. Former RCW 26.10.200 (1987), *repealed by* LAWS OF 2019, ch. 437, § 801. The second provision directed courts to apply chapter 26.09 RCW when reviewing a petition to modify a child's residence, which chapter governs dissolution of marriage proceedings. Former RCW 26.10.190 (2000), *repealed by* LAWS OF 2019, ch. 437, § 801. The pertinent code sections under both chapters carried nearly identical language. *Compare* RCW 26.09.270 *with* former RCW 26.10.200 (1987). Under both code sections, a party seeking to modify a

8

nonparental custody decree needed to submit "an affidavit setting forth facts supporting the requested order or modification." The trial court needed to deny a motion to modify unless it found "adequate cause for hearing the motion . . . established by the affidavits." RCW 26.09.270; former RCW 26.10.200 (1987).

The UGA never mentions "adequate cause." The only relevant language in the UGA states that: "If a petition is filed under RCW 11.130.190 [as an initial petition for appointment of guardian for a minor], the court *shall* schedule a hearing." RCW 11.130.195(1) (emphasis added). This language facially eschews any threshold finding of adequate cause. The separate code section governing modifications and terminations of guardianship orders says nothing about a court scheduling a hearing for motions brought under that section. RCW 11.130.240. Nevertheless, RCW 26.09.270, a section of the marital dissolution chapter, requiring a finding of adequate cause when a party seeks to modify a custody decree or parenting plan, remains in effect. Thus, one might reasonably conclude that the "adequate cause" procedure remains in force whenever a guardianship order is accompanied by a custody decree or parenting plan and a petitioner seeks to modify the custody decree or parenting plan.

Linda Harris' assignment of error that complains about the trial court's failure to find adequate cause before allowing a full trial raises both a procedural and substantive question. Procedurally, does the UGA still require a petitioner to support a request for modification with an affidavit setting forth supporting facts? Substantively, must a

9

petitioner forward different facts under the UGA than he or she would have forwarded under the former act? We chose, however, to ignore the questions.

Even if we imposed a requirement on the trial court to find "adequate cause" before proceeding to a trial on a petition for modification or termination of a guardianship, Harris would not be entitled to relief. The trial court necessarily found adequate cause to terminate the guardianship when it terminated the guardianship after conducting a trial. Angela Lockridge could have appealed a denial of her petition based on lack of adequate cause, but Harris held no corresponding right to appeal an affirmative finding of adequate cause. A threshold finding of adequate cause would not constitute a final, appealable decision resolving the merits of the case under RAP 2.2(a)(1). Neither would a finding of adequate cause be prejudicial to the final termination decision under RAP 2.4(b) because the court held a full hearing on the question of termination and based the ruling on the outcome of that hearing. This case proceeded to a full trial, and the court made decisions following that trial.

Adequate Cause Substance

Linda Harris also posits a distinction between the UGA's and the repealed nonparental custody act's test for effecting a modification or termination of nonparental custody. We disagree because the UGA formally adopted nonstatutory requirements imposed onto the former act by this court, such that the test under either statute would be essentially the same.

10

No. 38680-5-III,
*In re Custody of K.P. & L.P.*


In some of the final appellate decisions analyzing the former nonparental custody act, this court ruled that the constitutional right to parent necessitated changes to the statutory test for modification of a nonparental custody order. Under the repealed act, a parent seeking to modify a nonparental custody order needed to show "a substantial change . . . in *the circumstances of the child or the nonmoving party* and that the modification is in the best interest of the child and is necessary to serve the best interest of the child." RCW 26.09.260(1) (emphasis added). Addressing this deficiency in the twilight of the former act's life, this court held:

> Since RCW 26.10.190 clearly contemplates that a parent may seek to modify a nonparental custody order, due process requires that he or she be given a meaningful opportunity to do so. The factual basis for a nonparental custody order is a finding that the parent is unfit or a detriment to the child. A parent has no meaningful opportunity to regain custody of his or her child if that parent is precluded from showing there is no longer a factual basis for the order. We conclude that RCW 26.10.190, which applies the requirement of RCW 26.09.260(1) to modification of nonparental custody proceedings, violates due process insofar as it limits the change in circumstances to that of the child or the nonmoving party.
>
> Consistent with this conclusion, we also hold unconstitutional the requirement of RCW 26.10.190 that the modification be in the best interests of the child. The law presumes that a fit parent will act in the best interest of his or her child. *Troxel* [*v. Granville*], 530 U.S. [57,] 68-69, 120 S. Ct. 2054, 47 L. Ed. 2d 49 (2000)]. Thus, just as [*In re Custody of Shields*, 157 Wn.2d 126 (2006)] held that it is unconstitutional for a court to infringe on the parent-child relationship by making an initial custody determination based on a best interests analysis, it is similarly unconstitutional for a court to deny a modification on that basis.

11

No. 38680-5-III,
*In re Custody of K.P. & L.P.*


*In re Custody of S.M.*, 9 Wn. App. 2d 325, 337-38, 444 P.3d 637 (2019) (alterations added). Our decision in *Flaggard v. Hocking*, 13 Wn. App. 2d 252, 259-60, 463 P.3d 775 (2020) followed the ruling in *Custody of S.M.*

In adopting the UGA, Washington's legislature addressed the constitutional deficiency recognized in *S.M.* and *Flaggard*. Under the UGA:

> Guardianship under this chapter for a minor terminates:
> . . . .
> (b) When the court finds that the basis in RCW 11.130.185 for appointment of a guardian no longer exists, unless the court finds that:
> (i) Termination of the guardianship would be harmful to the minor; and
> (ii) The minor's interest in the continuation of the guardianship outweighs the interest of any parent of the minor in restoration of the parent's right to make decisions for the minor.

RCW 11.130.240(1)(b). A court may appoint a guardian for a minor on the basis that "[t]here is clear and convincing evidence that no parent of the minor is willing or able to exercise parenting functions." RCW 11.130.185(c). Thus, a parent seeking to terminate a guardianship order prevails under the UGA if the parent demonstrates an ability to exercise parenting functions. These requirements facially satisfy the constitutional test announced in *Custody of S.M.* and *Flaggard*. We detect no meaningful distinction between the test announced in *Custody of S.M.* from the test implanted in the UGA. Furthermore, Linda Harris' brief does not illuminate why the result of the trial would be different had the trial court applied the test under *Custody of S.M.*

12

No. 38680-5-III,
*In re Custody of K.P. & L.P.*

The UGA recognizes the continuing validity of custody orders issued under the nonparental custody act, chapter 26.10 RCW, but requires orders issued under the former act to undergo modification "subject to the requirements" of the UGA:

> All orders issued under chapter 26.10 RCW [the former act] prior to the effective date of chapter 437, Laws of 2019 [the UGA] remain operative after the effective date of chapter 437, Laws of 2019. After the effective date of chapter 437, Laws of 2019, if an order issued under chapter 26.10 RCW is modified, the modification is subject to the requirements of this chapter.

RCW 11.130.245(2). Linda Harris argues that this statutory language should be interpreted to require application of the repealed nonparental custody act whenever a petitioner moves to modify or terminate a guardianship that initially arose under the former act. We disagree.

Linda Harris' reading of RCW 11.130.245 contradicts the plain reading of the statute, requiring "modification . . . subject to the requirements of *this* chapter." RCW 11.130.245(2) (emphasis added). Such language demands that courts apply the UGA when entertaining a motion to modify or terminate a guardianship that arose under the former act.

Linda Harris argues such a plain reading renders RCW 11.130.245(2) superfluous because the UGA already provides a modification process in the neighboring code section, RCW 11.130.240. Again, we disagree. Section 245(2) is not superfluous because the legislature could have reasonably seen the need to clarify the test a court

13

should apply when reviewing a guardianship that arose under the former act. Section 245

advances a distinct purpose from section 240's governance of modifications, even if

section 245 directs courts to apply section 240.

Linda Harris also advances a strained reading of RCW 11.130.245(2)'s use of the

term "subject to." Section 245 requires modification of guardianships that arose under

the former act "*subject to* the requirements" of the UGA. (Emphasis added.). Harris

argues that we should read "subject to" as requiring application of all UGA provisions

*other than* the UGA's modification provisions. We disagree. Because the UGA says that

modifications of preexisting guardianships are "subject to the requirements" of the UGA,

the UGA governs all modification proceedings.

Linda Harris also asserts the "vested right" doctrine in the application of the

nonparental custody act's "adequate cause" requirement. The general statement of the

doctrine declares:

> A vested right, entitled to protection from legislation, must be
> something more than a mere expectation based upon an anticipated
> continuance of the existing law; it must have become a title, legal or
> equitable, to the present or future enjoyment of property, a demand, or a
> legal exemption from a demand by another.

*Godfrey v. State*, 84 Wn.2d 959, 963, 530 P.2d 630 (1975) (emphasis omitted).

We decline application of the vested rights doctrine on two grounds. First,

expectation in the continuance of existing law does not equate to a vested property right.

*In re Marriage of MacDonald*, 104 Wn.2d 745, 750, 709 P.2d 1196 (1985). Second, the

guardianship order conferred no property right to Harris, because children are not property. *Sheldon v. Sheldon*, 47 Wn.2d 699, 703, 289 P.2d 335 (1955).

Appointment of Attorney for Children

In her brief, Linda Harris repeatedly mentions court commissioner rulings denying appointment of an attorney for the two children. Thus, Harris may be arguing that the trial court erred in not appointing attorneys for Kyle and Lucy.

Linda Harris never assigns error to the several rulings denying the appointment. She also presents little, if any, argument in her brief on this subject. Therefore, we do not address the merits of the alleged mistake. Under RAP 10.3(a)(4), the appellant must place in her brief a "separate precise statement" of each error the appellant contends the trial court committed. Only issues raised in the assignments of error and argued to the appellate court are considered on appeal. *Weyerhaeuser Co. v. Commercial Union Insurance Co.*, 142 Wn.2d 654, 693, 15 P.3d 115 (2000).

Contempt Sanctions

Linda Harris argues that the trial court erred in imposing sanctions and in finding her in contempt. Nevertheless, Harris fails to identify a standard by which we should evaluate the challenged findings of contempt.

Linda Harris first faults the trial court for imposing sanctions in the September 16, 2021 order. Harris argues that the trial court should have converted her CR 60 motion into a motion to revise.

15

CR 11 sanctions are appropriate when a litigant files a claim for an improper purpose or if the claim is not grounded in fact or law and the signing litigant failed to conduct a reasonable inquiry. *Kilduff v. San Juan County*, 194 Wn.2d 859, 877, 453 P.3d 719 (2019). Harris' CR 60 motion was inappropriate procedurally because Harris sought to vacate a temporary order, and CR 60 provides relief only from final orders. CR 60(b).

Linda Harris fails to accompany, with a citation to authority, her contention that the superior court commissioner could have simply converted the CR 60 motion to a motion to revisit. If she wanted a revision under RCW 2.24.050, Harris should have sought relief before a superior court judge and not the commissioner who issued the original ruling. Finally, the commissioner listed voluminous reasons for finding that Harris acted in bad faith outside of her CR 60 argument.

Linda Harris also seeks to overturn the commissioner's September 16, 2021 sanction because the court commissioner purportedly improperly applied the doctrine of issue preclusion by referencing Harris' dismissed petition for de facto parentage. The commissioner did reference Harris' dismissed de facto parentage action, which action is not available in the record of this case, when holding that Harris lacked a factual basis to argue against Angela Lockridge's weekend parenting time. Harris' argument more closely implicates a trial court's authority to judicially notice facts under ER 201 rather than issue preclusion. But the record does not show that the trial court's sanction award was based, even partially, on judicial notice.

16

Linda Harris argues that the trial court improperly imposed sanctions when Harris sought the appointment of attorneys for the children. The commissioner's April 12, 2022 sanction found that Harris' request for attorneys was frivolous when the UGA did not provide for appointment of attorneys in termination proceedings. Harris advanced the attorney argument when the commissioner had previously ruled on the question. Having knowledge of the commissioner's position, Harris' reargument of the attorney appointment issue was frivolous. More importantly, the April 12 sanctions were also based on numerous other findings that Harris does not contest.

Linda Harris argues that the trial court improperly found her in contempt when she complied with the weekend residential schedule until February 18, 2022. Nevertheless, the order mandating Angela Lockridge enjoy weekend residential time with Kyle and Lucy did not specify an end date prior to February 18, 2022. The order remained in effect until superseded by another order or final decision. Harris' initial compliance with the order does not obviate a contempt finding based on later disobedience.

Finally, Linda Harris argues that Angela Lockridge brought "unclean hands" when she sought a contempt order against Harris. Harris fails to cite any law supporting an "unclean hands" argument. This court does not consider arguments unsupported by citation to legal authority. *Stewart v. State*, 92 Wn.2d 285, 300, 597 P.2d 101 (1979).

## CONCLUSION

We affirm all superior court rulings.

17

No. 38680-5-III,
*In re Custody of K.P. & L.P.*


A majority of the panel has determined this opinion will not be printed in the

Washington Appellate Reports, but it will be filed for public record pursuant to

RCW 2.06.040.

_____
Fearing, C.J.

WE CONCUR:

_____
Lawrence-Berrey, J.

_____
Birk, J.[1]

---

[1] The Honorable Ian S. Birk is a Court of Appeals, Division One, judge sitting in Division Three pursuant to CAR 21(a).